454 F.Supp. 250 (1978)
Ira SLOTKIN, Plaintiff,
v.
The HUMAN DEVELOPMENT CORPORATION OF METROPOLITAN ST. LOUIS, Harold Antoine, Carl K. Hoover, Gordon Henderson, David Suddeth, H. Garner and Walter Davis, Defendants.
No. 77-161C(4).
United States District Court, E. D. Missouri, E. D.
June 30, 1978.
*251 *252 Thomas H. Rost, Jefferson City, Mo., for plaintiff.
Louis Gilden, St. Louis, Mo., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits following a trial to the Court on alleged violations of 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and 42 U.S.C. § 1983. After consideration of the matter, the Court makes the following findings of fact and conclusions of law as set forth in the memorandum opinion below.
Plaintiff Ira Slotkin, a white resident of the Eastern District of Missouri, brought suit against his employer, The Human Development Corporation of Metropolitan St. Louis (HDC), a corporation duly organized and existing under the laws of the State of Missouri. Plaintiff also brought suit against Harold Antoine, the General Manager of HDC, and Carl Hoover, Gordon Henderson, David Suddeth, H. Garner, and Walter Davis, all of whom were employees of HDC at the time the alleged violations of plaintiff's civil rights arose. Having complied with all procedural prerequisites, the Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1343(4), 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981 and 1983.
Plaintiff alleges that as a white employee, he was treated differently from blacks in that 1) he was denied the same monetary benefits as black employees and that defendants tolerated an atmosphere of indifference to plaintiff's lawful requests in regard thereto; 2) plaintiff was forced to carry a heavier workload than black employees; 3) plaintiff was constructively fired because of these unequal working conditions; and 4) plaintiff was not rehired by defendants as a retaliatory act against his filing charges of discrimination with the E.E.O.C.
Plaintiff was first hired by defendant HDC on August 26, 1974 as a Work Training Specialist. HDC is a corporation that administers programs for the disadvantaged in St. Louis. At the time of plaintiff's hire, HDC's Concentrated Employment Program (CEP) in which plaintiff worked was funded through the United States Department of Labor's Office of Economic Opportunity (OEO).
HDC was at this time governed by the directive of OEO known as the "twenty percent limitation". This directive provided *253 that for new employees, any starting salary over $5,000.00 which involved an increase of more than twenty percent or $2,500.00, whichever was smaller, over an individual's previous salary had to be approved by the OEO Regional Office. Because of the twenty percent limitation, plaintiff was hired at a biweekly salary of $226.00 instead of the $281.00 biweekly salary the position normally commanded. Plaintiff was made aware of the twenty percent limitation, and at the time of his hire was told that a waiver would be sought by HDC from the Regional OEO office.
In December, 1974, the City of St. Louis became the contracting agent for HDC's Comprehensive Employment and Training Act (CETA) replacing CEP. From that time, December 1, 1974, a waiver from the City was required to authorize a salary in excess of the twenty percent limitation. The federal waiver, however, was still required for any salary earned prior to December 1, 1974 that exceeded the allowable limitations.
Plaintiff received his retroactive pay pursuant to the blanket waiver of the City in early January, 1975. This brought his $226.00 salary to $281.00 for the period of December 1, 1974 through January 1, 1975, which he continued to receive thereafter. It was not until February, 1975 that plaintiff received, pursuant to the OEO waiver, his retroactive pay covering the period from August 26, 1974, through November 30, 1974.
It is plaintiff's contention that the defendants' failure to promptly seek the OEO and City waivers, and their indifference to his requests in that regard, were violations of his civil rights because black employees were treated differently. 42 U.S.C. § 2000e-2; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff claims that HDC failed to enforce the twenty percent limitation against black employees who were Work Training Specialists or Coaches, as they were called after the CETA program was implemented.
Evidence presented by the parties at trial reveals that the defendants' failure to promptly obtain the necessary waivers was not based on race. Defendants did not process plaintiff's OEO waiver until December, 1974, through a series of misunderstandings as to the necessary procedures for obtaining such a waiver, and because of a lack of communication between supervisory personnel.
The necessity of a waiver was first mentioned in Personnel Manager Suddeth's memo of August 23, 1974, to General Manager Antoine informing him of the hiring of the plaintiff. Hoover, manager of the CEP and CETA programs, wrote a memo to Henderson requesting a waiver for plaintiff on September 12, 1974. Henderson, Director of Manpower, discussed the need for a waiver with Suddeth, and thus believed the procuring of the waiver was in progress. Suddeth delayed doing anything because he was waiting for a separate written communication from Henderson. Henderson, however, was working under the unspoken assumption that such a writing was not necessary. During this time, Hoover claimed that he was speaking to Henderson weekly about plaintiff's waiver.
Early in November, plaintiff went to see Suddeth and asked to be shown his waiver. There was none in his file at that time. On November 5, 1974, plaintiff filed his complaint with the E.E.O.C. On November 21, 1974, the day that Antoine learned of the E.E.O.C. claim, he asked Henderson why the waiver had not been obtained. On December 3, 1974, Henderson wrote a memo to Suddeth in regard to the waiver, and on December 4, 1974, Suddeth drafted the letter that was sent on that date under Antoine's name to the regional OEO office requesting a waiver of the twenty percent salary limitation for plaintiff. The Court finds that it was due to this administrative confusion and not a scheme based on race that plaintiff did not receive his retroactive pay pursuant to this OEO waiver until February, 1975.
Testimony presented on behalf of the defendants shows that Marguerite Scott, *254 plaintiff's black supervisor, waited at least as long as plaintiff for her waiver to be processed. She received her retroactive pay dating from July 22, 1974 at the approximate time that plaintiff did. It was the testimony of defendants Garner and Hoover that this delay in processing waivers was general to all; most all employees had pay problems in the first months of 1975.
Plaintiff testified that his E.E.O.C. complaint was filed on November 5, 1974, because he was told that a black employee, Ruth Walker, received more pay and was not required to get a waiver. Ruth Walker, however, had a previous salary history with HDC, and therefore did not fall within the twenty percent limitation according to OEO directives. Ezell Trice, who plaintiff believed was another black employee for whom the waiver requirement was not enforced, also fell under the exception to the twenty percent limitation because he had been previously employed by HDC.
During the period that plaintiff waited for his retroactive pay pursuant to the two waivers, plaintiff claims that defendants were indifferent to his lawful requests and inquiries about his pay. Testimony indicates, however, that he was able to talk with defendants Hoover, Henderson, and Suddeth. Plaintiff was never denied access to Scott to discuss his problem. Defendant Davis testified that he referred plaintiff's complaints to H. Garner, who conferred with plaintiff. While defendants apparently did not follow the proper procedure for a prompt request for a waiver, there was no showing that this action  or inaction  was based on race. Rather, from the evidence it is established that many of the employees, black and white, were caught in the same administrative red tape. Additionally, plaintiff did receive all of his retroactive salary pursuant to the waivers, and in fact testified that he was satisfied as to this. Accordingly, the Court cannot find that defendants failed to take prompt action because of plaintiff's race, nor can it find that defendants were indifferent to plaintiff's requests and inquiries as to the progress of the pursuit of his waiver.
Plaintiff also alleges that he was denied an across-the-board wage increase in December, 1974, that was given to two black employees. In December, HDC hired two black Coaches, Albert McClendon and Norman Thomas, at a starting biweekly salary of $298.00 on the basis of a tentative, handwritten pay schedule that reflected the expected pay increases to be awarded as a result of the City of St. Louis becoming the funding agency for HDC. New Coaches were to be hired at these new rates, and already employed Coaches were to be brought to this salary level.
The City contract at these rates was to begin on December 1, 1974. However, the contract had not as yet been approved by certain necessary City officials. Hence, the two new black Coaches were hired at an unauthorized rate, and all pay increases for incumbent Coaches had to be delayed until the contract became binding. The contract was finally agreed upon in the spring of 1975, and pay increases were processed in May of that year.
Other employees had complained about the delay in receipt of pay raises. Testimony indicates that this was a constant topic of conversation, and that several verbal inquiries were made. Black incumbent Coaches did not receive their across-the-board salary increases until after the City approved the contract in spring, 1975. Plaintiff's increase was not processed until September, 1975, and it was not until June 14, 1976 that defendant HDC tendered the $180.00 to plaintiff, who refused to accept it at that time.
The Court finds that plaintiff was not given his across-the-Board pay increase in the months of December, 1974 through April, 1975 because HDC had no authority to do so. Plaintiff was not denied this raise because of his race, and any disparity in treatment occurred as a result of HDC's premature reliance on an as yet unapproved pay schedule.
Plaintiff resigned from HDC effective May 2, 1975, a date prior to the City's approval of the wage increases. Plaintiff *255 was not immediately paid the $180.00 difference he would receive as retroactive pay because of the raise, because he was no longer employed by HDC. The Court finds that the credible evidence is that the delay in processing the payment papers for plaintiff was an administrative oversight that occurred because plaintiff was no longer employed with HDC when the authorization came through. Plaintiff's file had been pulled because he had resigned, and as a result, his retroactive pay was not processed. Additionally, Hoover testified that the plaintiff had never called him or anyone else regarding the funds that were due him after the raise was authorized. Hoover learned of the oversight through an E.E. O.C. officer.
Plaintiff also charges that he suffered discrimination at the hands of his employers by being required to handle a heavier caseload. The evidence, however, is clearly to the contrary. During the course of his employment with HDC, plaintiff never complained to Personnel Manager Suddeth about his workload. H. Garner testified that the caseload of plaintiff was from 15 to 20; the load that Coaches ordinarily carried was from 20 to 25. He also testified that plaintiff's workload at the Midtown Center was not different from that of others at that center, and that the workload there was considerably less than that of Coaches at the other HDC centers.
Plaintiff received performance ratings that overall were very good. The only negative testimony as to plaintiff's performance was from H. Garner, who said that at times, plaintiff's required reports were late. Garner also stated that if plaintiff spent any overtime on the premises, it was not spent working at his job. Garner further indicated that plaintiff's philosophical interests interfered with his job somewhat, because he spent too much time discussing his views with others instead of doing his job.
Walter Davis, the Field Service Supervisor for the CETA program testified that due to a shift in policy, plaintiff's caseload while working at the Grand center was being phased out as part of an attempt by HDC to get its clients to use neighborhood centers. Plaintiff's responsibility on Grand was to refer intake work to the Manchester office. Once referred, the Manchester office did the bulk of the necessary procedures. Davis testified that plaintiff may have done some intake work at the Grand office, but that under HDC policy, he should not have. Plaintiff never complained to Davis about his workload, and Davis had no recollection of plaintiff's having worked overtime at the Grand Avenue office.
Carl Hoover, Manager of the CETA program, revealed at trial that the Coaches at the Grand Avenue center carried about half the caseload of the Coaches at the Carr Central and Union-Sarah centers. Because of the strength of the evidence presented by the defendants as to this issue, the Court finds that plaintiff's claim that he was unequally treated as to his workload is totally without merit.
Plaintiff also alleges that he was constructively fired on May 2, 1975, because of the unequal treatment accorded him. A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job. Muller v. United States Steel Corporation, 509 F.2d 923 (10th Cir. 1975); Young v. Southwestern Savings & Loan Association, 509 F.2d 140 (5th Cir. 1975). The evidence indicates, however, that plaintiff, while dissatisfied with the administrative ineptitude and red tape in processing his salary waivers, resigned voluntarily.
Plaintiff claims that he worded his letter of resignation to read that "My employment has been a very educational experience for me. I have developed some valuable professional and personal relationships" because he was afraid that he would not receive the funds still owed to him if he wrote anything else. However, plaintiff's filing of an E.E.O.C. complaint, and his repeated verbal inquiries as to the procuring of his salary waivers at a time when other money was due to him belies this contention.
*256 Additionally, plaintiff testified that Carl Hoover encouraged him to stay in January, 1975, when plaintiff was considering leaving HDC. Hoover believed plaintiff to be "as good a Coach as we've ever had." Also, as testified to by Garner and Hoover, the treatment in regard to salary that plaintiff claimed was happening to him because he was white, was in fact a general problem that afflicted many employees. Accordingly, because there was not disparate treatment or unequal working conditions, the Court finds that plaintiff was not constructively fired from HDC's employ.
The Court therefore finds that as to the charges of disparate treatment in regard to the waiver, across-the-board pay increase, workload, and constructive firing, plaintiff made out a prima facie case. Defendant met its burden as to each of these claims, clearly establishing legitimate, nondiscriminatory reasons for the delays in obtaining the waiver and pay increase, and decisively rebutting plaintiff's claim of unequal caseload and constructive discharge. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff failed to establish that these reasons were pretextual in nature; therefore, the Court enters judgment for the defendants on each of plaintiff's claims discussed thus far.
Plaintiff's final charge of discrimination is that defendant HDC failed to rehire him in August, 1976, as a result of his having filed an EEOC charge in November, 1974. Ezell Trice, an HDC employee who worked with the plaintiff for two or three months, and who was later the Supervisor of the Carr Square Center, contacted plaintiff on July 9, 1976 to inform him that HDC was in immediate need of a Coach to be a temporary employee. On that same date, plaintiff filed his application with HDC.
Plaintiff's application was stamped "qualified" by David Suddeth, and was sent to Henderson of the Manpower section. Having heard nothing, on Tuesday, July 13, plaintiff spoke again with Trice, who mentioned that plaintiff's E.E.O.C. claim against HDC was still pending and suggested that he contact Hoover. Hoover told plaintiff that there was no vacancy and that Trice had not been authorized to fill any position. Plaintiff wrote of the situation in a letter sent to Harold Antoine, and indicated that despite the contradictions in what he was told, he was still interested in and available for work. Antoine testified that he did not remember receiving that letter in particular, but that normal procedure would be to refer it to Henderson. On July 21, 1976, David Suddeth sent a letter to plaintiff informing him that there was no position open and that plaintiff's application would be held for future reference.
Early in August, 1976, defendants posted an announcement that indicated an opening for a Coach. Applications were to be taken through August 16, 1976. It is Henderson's testimony that he tried several times a day to contact plaintiff by telephone to inform him of this opening. Neither Henderson nor Suddeth ever wrote to plaintiff to inform him of the available position. It was Hoover's testimony that he never received plaintiff's application from personnel.
Plaintiff presented additional testimony and exhibits at trial which revealed that there were three full-time permanent Coaches (Norman James, Barbara Britton, and Helen Fuller) whose resignations became effective from the period of July 9, 1976 through August 6, 1976. Also, one full-time temporary Coach's resignation became effective during this same time. Gary Miller was hired on July 27, 1976, to fill the temporary position vacated by Cynthia Hoppe. After the HDC posted the opening of a full-time permanent position on August 2, 1976, Miller was transferred to fill this vacancy on August 29, 1976.
Other than the evidence relating to the employment of Gary Miller to fill the temporary position vacated by Cynthia Hoppe, and Miller's subsequent transfer to a full-time Coach after the notice was posted, defendants produced no evidence indicating whether or not the vacancies created by the resignations of the full-time Coaches had ever been filled, and if so, by whom.
*257 Henderson testified that he discussed the plaintiff's application with Hoover, and in late July or early August he discussed plaintiff's application with Antoine in light of his still pending E.E.O.C. charge. Henderson stated that Antoine wanted plaintiff to be given fair consideration for any opening; the complaint to E.E.O.C. was not to be held against plaintiff, but no preference was to be given to him either. Ezell Trice testified that in a discussion with Hoover about the job opening, Hoover asked Trice if the plaintiff's charge with the E.E.O.C. was still pending. Hoover then said he did not know if this would have any effect on hiring but that it would not affect his recommending that plaintiff be employed. Hoover also testified that he told Trice to be careful that nothing was done to jeopardize plaintiff's E.E.O.C. case.
An adverse job action taken by an employer because an employee has filed an E.E.O.C. charge against the same or another employer is a violation of 42 U.S.C. § 2000e-3. Barela v. United Nuclear Corporation, 462 F.2d 149 (10th Cir. 1972); Pettway v. American Cast Iron Pipe Company, 411 F.2d 998 (5th Cir. 1969); EEOC v. Kallir, Philips, Ross, Inc., 401 F.Supp. 66 (S.D.N.Y.1975); Tidwell v. American Oil Company, 332 F.Supp. 424 (D.Utah 1971). It is not necessary that the employee establish the validity of the underlying E.E.O.C. claim in order to establish a charge of employer retaliation for having made the charge. Pettway, supra; Hearth v. Metropolitan Transit Commission, 436 F.Supp. 685 (D.C.Minn.1977).
The burden of proof standards of McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) apply to a retaliation charge. To establish a prima facie case of retaliation, the plaintiff must show that 1) he had engaged in opposition to Title VII discrimination or participated in a Title VII proceeding; 2) that he suffered adverse action from an employer contemporaneous with or subsequent to the opposition or participation; 3) and that there is evidence of a causal connection between the underlying act and the retaliatory action. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F.Supp. 318 (D.Mass.1976). The burden then shifts to the defendant to establish a nondiscriminatory, legitimate reason for the adverse job action. If the defendant can establish such a reason, the burden then shifts to the plaintiff to show that the reason is pretextual in nature. McDonnell Douglas Corp. v. Green, supra; Hochstadt, supra. If retaliation played any part in the adverse action, even though not the sole reason, the employer's action is a violation of 42 U.S.C. § 2000e-3. United States v. Hayes International Corp., 6 FEP 1328 (N.D.Ala.1973); Tidwell v. American Oil Company, 332 F.Supp. 424 (D.Utah 1971).
It is the opinion of the Court that plaintiff established a prima facie case of violation of § 2000e-3 as to defendant HDC. The defendant, however, did not meet its burden of establishing a lawful reason for its failure to rehire plaintiff. HDC had received plaintiff's application sometime prior to July 21, 1976. It had been marked "qualified", and in light of the plaintiff's previous experience as Coach and his overall good ratings, plaintiff was entitled to consideration for the temporary job and for the permanent position which was posted on August 2, 1976.
Testimony established that defendant HDC had knowledge of plaintiff's E.E.O.C. claim, and that Henderson, Hoover, and Antoine were aware that the claim was still pending at the time of plaintiff's application in July, 1976. Although defendant Antoine advised that plaintiff was to be given every consideration for employment, when an opening was available, plaintiff was never contacted. While posting was not required for a temporary position, plaintiff, who had been informed by Suddeth that his application would be held for future positions, was never contacted, interviewed, or otherwise considered. Additionally, testimony indicated that defendant HDC was in immediate need of an experienced Coach to fill this temporary position. When the notice was posted as to the permanent position *258 on August 2, 1976, plaintiff again was not informed, interviewed or given other opportunity relative to this job.
Henderson tries to excuse this failure to contact plaintiff by testifying that he tried several times during the period of August 2 through August 16, 1976, to telephone plaintiff. The Court believes that ordinary business practice dictates that a letter be sent to plaintiff in order to reasonably assure that he be contacted. Because no one was hired for the permanent position until Gary Miller was transferred over from his job as a temporary Coach on August 29, 1976, defendant HDC had ample time within which to correspond with plaintiff.
Defendants did not conclusively establish that the vacancies created by the resignations of Coaches Barbara Britton, Norman James, and Helen Fuller were in fact not filled, or not authorized to be filled, at that time or later; nor did they establish why, if these employees were replaced, plaintiff was not notified as to the job openings. The Court therefore finds that retaliation against plaintiff was a principal factor in failing to hire him at a time when at least one position was open and plaintiff was well qualified to fill it.
After considering all the facts as set forth herein, and taking the testimony and evidence as a whole, the Court concludes that plaintiff made out a prima facie case against defendant HDC, which HDC failed to rebut. The evidence presented at trial, however, was not sufficient to establish a direct, personal involvement by defendant Antoine in the failure to rehire plaintiff because of his E.E.O.C. claim. Accordingly, plaintiff shall have judgment against defendant HDC on the 42 U.S.C. § 2000e-3 claim, together with all costs incurred herein and a reasonable attorney's fee. Defendant Antoine shall have judgment against plaintiff on this same claim.
The Court shall retain jurisdiction of this matter for the purpose of hearing further evidence to clarify testimony presented by the plaintiff on the issue of reinstatement and back pay, and to determine a reasonable attorney's fee.