**Tyrone DARRIS, Plaintiff,**

v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF YOUTH SERVICES, Defendant.**

**No. 82–238C(5).**

United States District Court, E.D. Missouri.

Feb. 15, 1984.

Steven M. Hamburg, Clayton, Mo., for plaintiff.

Melody A. Bryan, Dept. of Social Services, Gen. Counsel Div., Nancy Kelley Baker, Melinda Corbin: Asst. Attys. Gen., Jefferson City, Mo., for defendant.

## MEMORANDUM OPINION

LIMBAUGH, District Judge.

This matter is before the Court on a Title VII and constructive discharge complaint. Plaintiff alleges that he was not transferred and promoted to the position of group leader at Group Home 12 (a female juvenile facility in St. Louis City) because he is a black male. He further alleges that he was threatened with a demotion when he

voiced his grievance to his superiors. Plaintiff seeks the following relief: 1) an order requiring the Missouri Department of Social Services, Division of Youth Services (hereinafter referred to as DYS) to assign plaintiff to Group Home 12 as a Youth Specialist III or a Group Leader; 2) backpay for compensation of lost employment opportunities; 3) award of damages for mental anguish and emotional distress suffered by plaintiff; 4) reasonable attorney's fees and costs of litigation; and 5) any other relief this Court deems appropriate.

The Court has jurisdiction over this controversy pursuant to 42 U.S.C. § 2000e *et seq.* and 28 U.S.C. § 1343. Plaintiff has alleged that he was constructively discharged from his employment with DYS, that he was not transferred and promoted to positions for which he was qualified, and the sole reason plaintiff has not been transferred and promoted is due to the discriminatory employment practice of defendant with respect to race and sex.

After hearing the testimony in this bench tried case, the Court finds that plaintiff, Tyrone Darris, is a black male citizen of the United States, and a resident of St. Louis City, State of Missouri. Defendant, Missouri Department of Social Services, Division of Youth Services, is a State agency existing and operating pursuant to Chapter 219 R.S.Mo. At all relevant times herein, plaintiff was employed by DYS being first hired on or about August 1, 1978, as a Youth Specialist I (YSI) with assignment to the Hogan Street Regional Youth Center, St. Louis, Mo. The Hogan Street juvenile facility was a boys' institution.

On or about August 1, 1979, plaintiff was promoted to the position of Youth Specialist II (YSII), and on June 1, 1980, was transferred from the Hogan Street juvenile facility to Group Home 12, located on Waterman Street in St. Louis City. Group Home 12, while located on Waterman Street, was a boys' home.

Plaintiff was promoted to Youth Specialist III (YSIII) on or about August 1, 1980. YSIII is a temporary position, i.e., a training period for a position as a Group Leader.

During the months of October-November, 1980, Group Home 12 was relocated to St. Louis Avenue in St. Louis City. At that time, Group Home 12 changed to a girls' home.

On or about November 1, 1980, plaintiff consented to be transferred and was so transferred to the Babler Lodge residential facility, in Chesterfield, Missouri, and remained there until May 18, 1981. Plaintiff's transfer was approved by Clarence Roland and Lawson Calhoun, black male administrators at DYS.

Jerri Turner, a black female, was assigned the Group Leader position at Group Home 12. Turner was a YSII before her promotion.

Plaintiff, on or about May 17, 1981, was asked by Mario Garza, facility manager at Babler Lodge, to lead the boys' group as a Group Leader. He was told by Garza that if he did not accept the position offered at Babler Lodge, the other alternative was a YSII job at Group Home 12. Plaintiff rejected the Garza offers and resigned his position with DYS on May 18, 1981, and has not since been employed by DYS.

Plaintiff filed an employment discrimination charge with the Equal Employment Opportunity Commission and a similar charge with the Missouri Commission on Human Rights. On December 3, 1981, EEOC dismissed plaintiff's charge and shortly thereafter the Missouri Commission on Human Rights rendered a decision of no cause with respect to plaintiff's complaint. On December 3, 1981, plaintiff received a "Notice of Right to Sue" in federal court.

This suit was filed by plaintiff on February 22, 1982, within the requisite ninety (90) days of receipt of the "Notice of Right to Sue" issued by the EEOC.

All knowledgeable parties testified that plaintiff was qualified for the Group Leader position except that he had not fulfilled, at the time in question, the merit exam requirement. It also appeared no one ever stated to plaintiff that there was a policy of staffing girls' homes with female personnel and boys' homes with male personnel.

Having determined the foregoing facts, the first issue to be addressed by the Court is whether plaintiff has submitted a proper case under Title VII. In order for plaintiff to prevail upon his claim of discrimination in employment under Title VII, he must first establish, by a preponderance of evidence, a prima facie case of discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff must show that he is a member of a protected class, that he was qualified for an available position with the employer, that he was rejected by the employer and that the position was awarded to an individual with similar or less qualifications. Once plaintiff establishes his prima facie case of discrimination, the burden shifts to defendant to rebut the allegation by articulating "some legitimate nondiscriminatory reason for the employee's rejection". *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. If the employer meets this burden, the plaintiff then must prove by a preponderance of evidence that the employer's stated reasons were merely a pretext. *Burdine,* 450 U.S. at 252–56, 101 S.Ct. at 1093–95.

■ Plaintiff is a black male who sought a position as a group leader. This position was instead filled by a black female, Jerri Turner. Although Ms. Turner was originally at a lower rank than plaintiff, she possessed all the needed qualifications and, unlike plaintiff, had taken the required merit exam for group leader. Plaintiff's superiors were all members of a minority class and the evidence shows that plaintiff was asked to succeed a black male, Jimmy Taylor, as group leader at the Babler Lodge residential facility. The Court finds that plaintiff has failed to establish a prima facie case that defendant discriminated against plaintiff because he is black.

Plaintiff's parallel discrimination claim is that he was denied the group leader position at Group Home 12 because he is a male. Plaintiff further avers that defendant has failed to prove that a "bona fide occupational qualification (BFOQ)" existed, i.e., a justification for sex discrimination, which requires the position to be filled by a female. 42 U.S.C. § 2000e–2(e).

■ As stated before, plaintiff is a black male who sought a position as group leader. He possessed the basic qualifications for the job. The job was ultimately given to a black female who also possessed the basic qualifications but had also taken and passed the merit exam for group leader. Plaintiff has established a prima facie case of sex discrimination.

■ Defendant's burden is to rebut plaintiff's prima facie case by articulating a legitimate non-discriminatory reason for its rejection of plaintiff as a group leader at Group Home 12. Plaintiff has erroneously characterized defendant's burden as one of proving a BFOQ existed. Defendant has never admitted to a practice of sex discrimination, especially in plaintiff's case, and consequently never raised the affirmative defense of BFOQ. These two factors alone distinguish this case from the case of *Jatczak v. Ochburg,* 540 F.Supp. 698 (E.D. Mich., 1982), upon which plaintiff primarily relies. Mr. Roland, Mr. Robinson and Mr. Calhoun (Plaintiff's superiors), all testified that plaintiff was transferred to the Babler lodge facility because it was a new program in need of experienced staff personnel. Plaintiff testified that he was told this when asked to go to the Babler Lodge facility. Ms. Balenger testified that plaintiff was offered the group leader position at Babler Lodge because of the recent resignation of Jimmy Taylor. Mr. Roland and Mr. Calhoun testified to plaintiff's apprehension at leading girl's groups and although plaintiff denies this, the evidence indicates plaintiff's work experience has been primarily with juvenile boys. Plaintiff offered no evidence to rebut defendant DYS' assertions that plaintiff was transferred to Babler Lodge to fill staffing needs and offered a promotion there because of his expertise in working with boys' groups.

Ms. Taylor was offered the job as group leader of Group Home 12 because she had all the basic qualifications plus had taken the merit exam and, unlike plaintiff, she had experience working with juvenile girls. Plaintiff has failed to show by a preponderance of evidence that defendant's stated reasons were merely a pretext and that defendant's employment decisions were really based upon plaintiff's sex.

Next to be considered is whether an alleged threat of demotion amounts to a constructive discharge. In order to show constructive discharge, plaintiff must establish that defendant DYS deliberately made plaintiff's working conditions so intolerable that plaintiff had no other choice but to quit. *Thompson v. McDonnell Douglas*, 552 F.2d 220 (8th Cir.1977); *Muller v. U.S. Steel Corp.*, 509 F.2d 923, 929 (10th Cir.) cert. den. 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Slotkin v. Human Development Company of Metropolitan St. Louis*, 454 F.Supp. 250 (D.Mo. 1978). More precisely, "the employer's actions must have been taken with the intention of forcing the employee to quit". *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981). At the time of plaintiff's resignation his primary complaint about his job was increased travel expenses. His resignation letter of May 18, 1981, only refers to what plaintiff considered to be improper procedures in regard to his transfer and an alleged threat of demotion. At no time, did plaintiff express discontent with his job duties or with his working environment. Plaintiff testified that his refusal of a promotion at Babler Lodge had nothing to do with his feelings about the job duties. In fact, plaintiff has never expressed a belief that defendant DYS ever took affirmative action to make his job difficult or his working conditions intolerable. The evidence is unclear as to whether plaintiff was "threatened with a demotion", but the evidence does indicate that since the group leader position was already filled at Group Home 12, the only available position left at Group Home 12 was a YSII position. Mr. Roland, Mr. Robinson and Mr. Calhoun testified that YSIII positions were being phased out. Assuming that the choices given plaintiff were the group leader position at Babler Lodge or the YSII position at Group Home 12, plaintiff would have been "demoted" if he chose to return to Group Home 12. Plaintiff did not offer any evidence that other job alternatives existed. The Court finds that plaintiff has failed to prove that defendant DYS took any action with the intent to force plaintiff to quit.

Accordingly, judgment will be entered for the defendant.