895 F.2d 467
 52 Fair Empl.Prac.Cas. 171,
52 Empl. Prac. Dec. P 39,607
Robert W. SMITH, Appellee,
v.
GOODYEAR TIRE & RUBBER COMPANY, Appellant.
Robert W. SMITH, Appellant,
v.
GOODYEAR TIRE & RUBBER COMPANY, Appellee.
 Nos. 89-5057, 89-5058.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 12, 1989.
Decided Feb. 5, 1990.
Rehearing Denied March 7, 1990.
 
 Roy A. Ginsburg, Minneapolis, for appellant.
 J. Richard Bland, Minneapolis, for appellee.
 Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 The Goodyear Tire and Rubber Company (Goodyear) appeals from a final judgment entered in the district court[1] upon a jury verdict finding that Goodyear had discriminated against Robert W. Smith on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621, et seq. On Goodyear's motion, the district court set aside the jury's finding that Goodyear's actions were willful and Smith cross appeals from that ruling and the denial of equitable relief. We hold that Smith failed to prove that Goodyear committed age discrimination, and accordingly reverse.
 
 
 2
 In May, 1983 Goodyear eliminated Smith's job as an area sales manager (ASM) in the Minnesota Iron Range area and offered him a job as a retail area salesman (RAS) in Minneapolis, Minnesota, which he refused. At that time, Smith was fifty-one years old and had been an ASM in the Iron Range for twenty-three years.
 
 
 3
 In early 1983 Donald Salyers, Goodyear's manager of wholesale tires, decided to expand the sales force for farm tires by creating a farm tire sales engineer (FTSE) position. In order to do so, Salyers determined it would be necessary to eliminate an ASM position for every FTSE position added. He also created a District Telecommunications Manager (DTM) position, which addition would also necessitate the elimination of ASM positions.
 
 
 4
 Salyers instructed Richard Fuhrmeister, manager of sales and salaried personnel, to contact the regional managers to determine an equitable manner by which to eliminate ASM positions as the newly created positions were added. Fuhrmeister contacted Thomas Zesiger, manager of the Heartland region, which encompassed the Minnesota district. Smith's territory was one of nine territories in the district.
 
 
 5
 Zesiger testified that Fuhrmeister contacted him in February 1983 concerning the elimination of four ASM positions, including one in the Minnesota district, to accommodate the addition of four FTSE positions. Zesiger contacted Bruce Wiggins, manager of human resources, to assist him in deciding how to eliminate the positions in an equitable and consistent manner. After reviewing several possible methods, Zesiger decided to eliminate ASM positions based on the wholesale dollar volume of sales for 1982. At that time, he also decided he would service the territory and customers of the eliminated positions based on customer need and geography.
 
 
 6
 By letter dated March 7, 1983, and addressed to Salyers, with carbon copies to Fuhrmeister, Wiggins and Robert Walker, manager of the Minnesota district, Zesiger recommended that Carl Hanssen be promoted to the FTSE position, that the territory of Robert Fabian be eliminated and consolidated with the territory of D.A. Jacobson, and that Jacobson be the ASM for the combined area. Zesiger noted that the headquarters of Jacobson's territory was one hundred miles from the headquarters of Fabian's territory, and that the combined area would have a wholesale volume of sales in excess of $5,000,000.00. Zesiger set forth the nine territories within the Minnesota district by wholesale dollar volume. Fabian had the lowest volume, Jacobson the second lowest, and Smith the third lowest. In addition to noting that Fabian's territory had the lowest wholesale dollar volume, Zesiger noted, among other things, that Fabian had been on probation for poor performance and had placed seventh out of the nine ASMs in achieving his sales objectives.
 
 
 7
 In a blind carbon copy to Salyers and Fuhrmeister, Zesiger stated that he would be analyzing the work loads of the remaining ASMs and wanted to provide assistance to the district managers. He further stated, "Regardless of what form this assistance takes in the District Office, the territory that will be eliminated to provide this assistance will be [Smith's], which is the next smallest territory in volume in the District."
 
 
 8
 Zesiger's letter was based in large part on Wiggins' handwritten notes, which Zesiger had reviewed before drafting the letter. The notes indicated Fabian's probationary status and his seventh place achievement ranking. Wiggins also noted that Fabian would be fifty-nine years old in May, 1983.
 
 
 9
 In the last paragraph of his notes, Wiggins noted that Smith had placed eighth in achieving his sales objectives but that Smith had signed two new dealers in 1982, was "certainly on the right track" in making his objectives, and that unemployment in the Iron Range was twenty per cent. He also noted that Smith was fifty-one years old.
 
 
 10
 Zesiger testified that in April, 1983 he was informed that he had to eliminate another ASM position to accommodate a DTM position. Because at that time, Smith's territory had the lowest wholesale volume, Zesiger eliminated his territory and combined it with the adjacent territory. Phillip Heimbach, the ASM in the adjacent territory, became the ASM for the consolidated territory. Zesiger explained that Goodyear retained the ASM of the territory that had not been eliminated. Ken Oanes, aged fifty-one, was promoted to the DTM position.
 
 
 11
 Zesiger testified that as of March 7, 1983, he had not decided to eliminate Smith's position but only was aware of the possibility that the territory might have to be eliminated. Zesiger stated he had not "skipped over" Jacobson's territory to eliminate Smith's territory, but had merely combined Jacobson's territory with that of Fabian's based on the geographic location and type of customer. In response to Smith's counsel's question why Wiggins' notes had indicated the ages of Fabian and Smith if wholesale sales volume was the only criterion on which elimination of a territory was based, Zesiger responded that Wiggins, as personnel manager, was only doing his job in informing him that the men were in a protected class. Wiggins also testified that he believed it was his responsibility to point out the ages because the men were in a protected class. He also stated that he discussed Smith because he had placed behind Fabian in achieving his sales objectives.
 
 
 12
 On May 9, 1983 Robert Walker informed Smith that his territory was being eliminated and offered him a job as a RAS in a store in Minneapolis, Minnesota. According to Smith's testimony, Walker told him that his base salary would be approximately half of his base salary as an ASM but that he could expect to do well "incomewise" with commissions, that he was highly promotable and should not consider the position as a permanent set-back. Smith also stated that Walker wanted an answer immediately. Smith told him he needed some time to consider the offer, and was allowed vacation time to consider the offer. During that time, Smith consulted with Ray Willette, manager of commercial tire sales, and Wilbur Christensen, who had been an ASM and worked as a RAS for three months at another store in Minneapolis. Both men told Smith that even with commissions his salary would not come close to his former salary. In response to counsel's question why he did not accept the RAS position, Smith responded:
 
 
 13
 I could not accept the financial situation that Goodyear was placing me in due to reasons of marketability of my home, moving my family at that time which was on my own expense, moving into a higher cost of living area, assuming a job that would pay me probably less than 50 per cent what I was making and the turnover rate and the experiences that other people had had on the job. I felt that it ... was an elephant's graveyard.
 
 
 14
 On cross-examination, he acknowledged that in his deposition he stated he did not know why his position was eliminated.
 
 
 15
 Smith then filed this action against Goodyear. At the conclusion of Smith's case, Goodyear moved for a directed verdict, arguing that Smith had failed to prove a prima facie case of age discrimination and failed to prove that he was constructively discharged. The court denied the motion, and Goodyear presented its case. At the conclusion of the evidence, the court submitted the case to the jury on a special verdict form. The jury found that Goodyear had willfully discriminated against Smith on the basis of age by eliminating his territory, constructively discharging him, and failing to reassign him to other available positions, and awarded him $109,700.00 in compensatory damages.
 
 
 16
 On Goodyear's motion, the district court set aside the jury's finding of willfulness, but denied Goodyear's motion for a judgment notwithstanding the verdict (j.n.o.v.), or in the alternative a new trial. The court also denied Smith's motion for liquidated damages and front pay.
 
 
 17
 On appeal, Goodyear asserts that the district court's judgment should be reversed because Smith failed to establish a prima facie case of age discrimination. Goodyear relies on Holley v. Sanyo Mfg., Inc., 771 F.2d 1161 (8th Cir.1985). In Holley, this court held that in a reduction-in-force case where positions are combined, a plaintiff cannot establish a prima facie case of age discrimination by merely presenting proof that he was terminated while a younger person was retained in the combined position. The court held that a plaintiff must provide additional evidence that age was a factor in the employer's actions. Id. at 1165-66. The court explained that "[t]he ADEA does not require that every plaintiff in a protected age group be allowed a trial simply because he was discharged during a reduction-in-force." Id.
 
 
 18
 We, however, need not address Goodyear's contention that Smith failed to prove a prima facie case. " '[B]ecause the case was fully tried on the merits, we focus our attention on the ultimate question presented and not on the adequacy of a party's showing at any particular stage of the analysis....' " Bethea v. Levi Strauss & Co., 827 F.2d 355, 357 (8th Cir.1987) (quoting Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 135 (8th Cir.1985)). "The ultimate issue in an ADEA case is whether the complaining employee has shown that age was a determining factor in the employer's action." Tolan v. Levi Strauss & Co., 867 F.2d 467, 469 (8th Cir.1989). Thus, our inquiry becomes whether Goodyear discriminated against Smith on the basis of age. In reviewing the district court's denial of Goodyear's motion for j.n.o.v., we view the evidence in the light most favorable to Smith and give him the benefit of all reasonable inferences that may be drawn from the evidence. Id.
 
 
 19
 After Smith presented his case-in-chief, Goodyear articulated a legitimate, non-discriminatory business reason why it eliminated Smith's position. Goodyear presented evidence that Smith's position was eliminated as part of a reduction of ASM positions nationwide and that the elimination was accomplished by the age-neutral criterion of lowest wholesale sales volume. Smith does not challenge Goodyear's decision to eliminate ASM positions or suggest that lowest sale volume was not age-neutral. In closing argument, Smith's counsel stated, "Mr. Smith doesn't claim that Mr. Salyers, Mr. Fuhrmeister or Mr. Wiggins were involved in any age discrimination, but it's clear Mr. Zesiger was." Smith's theory of the case was that by March 7, 1983 Zesiger had decided to eliminate two ASM positions in the Minneapolis district, and had manipulated the criterion and timing of the decision to consolidate Jacobson's territory with that of Fabian's in order to eliminate his territory. However, even assuming that Zesiger had decided to eliminate Smith's territory at the same time he decided to eliminate Fabian's territory, there was no evidence that age was a factor in the decision. Under Holley, the fact that Jacobson became the ASM for the combined territory is not evidence of age discrimination. See Holley, 771 F.2d at 1168.
 
 
 20
 Smith argues that because the jury must have discredited Zesiger's testimony that he decided to eliminate Smith's territory after he decided to eliminate Fabian's territory, the discredited testimony creates an inference of age discrimination. In Barber v. American Airlines, Inc., 791 F.2d 658, 660 (8th Cir.), cert. denied, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986), this court stated that "[i]n general, if the employer's asserted nondiscriminatory reason for taking the action of which a plaintiff complains can be shown not to be the true reason, or not to have been consistently applied in the past, an inference of discrimination can rationally be drawn by the trier of fact." However, this court made clear that in certain situations, an inference of age discrimination from discredited testimony would be impermissible. Id. We believe this is such a case.
 
 
 21
 Zesiger testified that he consolidated the two territories because Jacobson's territory was adjacent to Fabian's, the territories' headquarters were only one hundred miles apart, the majority of customers for both territories were farm tire customers, and there was no need to relocate Jacobson to service the customers. Smith does not challenge these reasons. Rather, he argues that the consolidation of the territories "was not accomplished 'pursuant to the plan.' " However, as part of his case-in-chief, Smith introduced portions of Zesiger's deposition in which he stated that at the time he decided how to eliminate ASM positions, he also had to decide how to service accounts and territories of an eliminated ASM. Zesiger stated that geographic location and customer needs were the criteria upon which a decision would be based to accommodate the eliminated territory. Therefore, Goodyear's "plan" included not only elimination of ASM territories but the consolidation of those territories with other territories based on geography and customer needs. As was stated in Barber, "[t]he jury could rationally have believed that plaintiff[ ] ought in good conscience to have been permitted to stay ..., but there is absolutely no substantial evidence in this record that would justify attributing [the employer's] actions to plaintiff['s] age." 791 F.2d at 661. See also Lucas v. Dover Corp., 857 F.2d 1397, 1403 (10th Cir.1988). ("In short, while plaintiffs may disagree with [the employer's] evaluation of who was the best qualified employee to fill the consolidated positions, as long as a jury had no reasonable basis for determining that age was a determining factor in those evaluations, the jury verdict cannot stand.") "This court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." Id. at 1403-04 (citing, e.g., Jorgensen v. Modern Woodmen of America, 761 F.2d 502, 505 (8th Cir.1985)).
 
 
 22
 Smith argues that the fact that before drafting the March 7, 1983 letter, Zesiger had reviewed Wiggins' notes which mentioned that Smith was fifty-one was sufficient evidence from which the jury could infer that Zesiger had eliminated Smith's territory on account of age. We disagree. On the facts of this case, we believe this single reference to age is insufficient evidence of Goodyear's intent to discriminate. See Walker v. St. Anthony's Medical Center, 881 F.2d 554, 559 n. 6 (8th Cir.1989) (supervisor's sexist comment did not demonstrate employer's decision to discharge was based on gender); Leichihman v. Pickwick Int'l, Inc., 814 F.2d 1263, 1271 (8th Cir.) (reference to age does not necessarily prove intent to discriminate), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). Wiggins' notes were primarily devoted to an evaluation of Fabian's poor performance. Only the last paragraph referred to Smith, who had placed behind Fabian in achieving his sale objectives. However, in describing Smith's performance, Wiggins was complementary, noting that Smith was "certainly on the right track" in making his objectives and had signed two new dealers, despite a twenty per cent unemployment rate in his territory. Taken in context, Wiggins' reference to Smith's age does not support an inference of age discrimination. See Mullins v. Uniroyal, Inc., 805 F.2d 307, 309 (8th Cir.1986) (reference to age taken out of context does not support age discrimination claim).
 
 
 23
 Goodyear also argues that there was insufficient evidence from which a jury could conclude that Smith was constructively discharged on account of age. We agree.[2] " 'A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job.' " Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir.1981) (quoting Slotkin v. Human Development Corp., 454 F.Supp. 250, 255 (E.D.Mo.1978)). However, "[a] constructive discharge arises only when a reasonable person would find conditions intolerable." 646 F.2d at 1256. In addition, "the employer's actions must have been taken with the intention of forcing the employee to quit." Id.
 
 
 24
 In this case, there was no evidence that by offering Smith the job as an RAS, Goodyear intended to force him to quit. To the contrary, all the evidence demonstrated that Goodyear encouraged Smith to accept the job. Even Smith acknowledged that, among others, Walker and Wiggins "urged" him to take the job, and that the reason he did not accept the job was because of financial considerations. See Pena v. Brattlebro Retreat, 702 F.2d 322, 325 (2d Cir.1983) (no constructive discharge where, among other things, employee testified employer encouraged her to continue employment). Furthermore, the evidence demonstrated that there were two hundred RAS positions nationwide and that approximately twenty-five ASMs had been assigned to RAS positions. In fact, the ASMs in three districts in the Heartland region whose territories had also been eliminated in 1983 were reassigned to and accepted RAS positions. "Where ... all employees are treated identically, no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985), cert. denied, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986); see also Johnson v. Bunny Bread Co., 646 F.2d at 1257 (black plaintiffs not subjected to intolerable working conditions on account of race where white employees subjected to same conditions).
 
 
 25
 In addition, Smith's belief that he could not accept the job because of financial considerations cannot constitute "intolerable working conditions." Smith placed great emphasis on the fact that he would be unable to sell his home because of the downturn in the economy on the Iron Range. Because Smith refused the job offer without attempting to sell his house, his testimony arguably is speculative and unsupported. See Cherchi v. Mobil Oil Corp., 693 F.Supp. 156, 163 n. 6 (D.N.J.) (employee's testimony that he would lose money on sale of home was speculative and did not constitute "colorable evidence of an intolerable condition"), aff'd, 865 F.2d 249 (1988). Furthermore, Goodyear cannot be held accountable for the downturn in the economy of the Iron Range. See id. at 163 ("plaintiff's personal circumstances do not constitute grounds for a claim that [employer] constructively discharged him"). Nor do we believe that Smith acted reasonably in relying on Willette's and Christensen's statements that his commissions as a RAS would be low in the face of Goodyear's representations to the contrary and that the position would not be permanent. "Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast." Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir.1987) (emphasis in original). In Garner, the court held that an employee was unreasonable where she resigned after one day where there was no rational reason to believe she had been permanently assigned as a floater or "would forever" be denied a promotion. Id.
 
 
 26
 We also find there is insufficient evidence that Goodyear failed to reassign Smith to other available positions on account of age.
 
 
 27
 Because we hold that Goodyear did not discriminate against Smith on the basis of age, we do not address Goodyear's remaining issues or the issues raised by Smith's cross-appeal.
 
 
 28
 Accordingly, the judgment of the district court is reversed with instructions to enter judgment for Goodyear.
 
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Judge for the District of
 Minnesota.
 
 
 [2]
 We, however, do not agree with Goodyear that if Smith does not prevail on his constructive discharge claim, he cannot prevail on any of his ADEA claims. Smith could "prevail even if the evidence does not support an inference that [he] was terminated or constructively discharged." Stamey v. Southwestern Bell Tel. & Tel. Co., 859 F.2d 855, 860 (11th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989). "The [ADEA] forbids far more than merely discriminatory discharge and hiring practices." Id. The ADEA forbids discrimination on account of age with respect to an employee's "compensation, terms, conditions, or privileges of employment" or acts that "otherwise adversely affect his status as an employee" because of age. 29 U.S.C. Sec. 623(a)