Rodolfo **ROXAS**, Plaintiff,

v.

**PRESENTATION COLLEGE, a South Dakota Corporation, Bernadetto Bodine, Tim Bergstrom, Joyce Englert, Joseph Vogel, Rodney Fouberg, Harold Higgins, Cecilia Kitto, Patricia Larson, Craig McFarland, Joan Reichelt, Ancilla Russell, Katherine Scholtz, and Susan King–Schutz, individuals, Defendants.**

No. Civ. 93–4206.

United States District Court,
D. South Dakota,
Southern Division.

April 21, 1995.

John E. Burke, Sioux Falls, SD, for plaintiff.

Rory King, Siegel, Barnett & Schutz, Aberdeen, SD, for defendants.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

Plaintiff Rodolfo Roxas, a Roman Catholic priest formerly employed at Presentation College in Aberdeen, South Dakota, filed suit against Presentation College, its former President, and members of its Board of Trustees, claiming discrimination on the basis of race (Asian), national origin (Filipino), gender (male), and age (54), in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000(e) (Title VII), and 29 U.S.C. § 623 (Age Discrimination in Employment Act (ADEA)). Plaintiff also asserts claims for breach of contract and misrepresentation under state law. Defendants moved for summary judgment, and plaintiff responded. Having heard the oral arguments of counsel for the parties and for the reasons given below, the Court grants defendants' motion for summary judgment.

Presentation College, a nonprofit corporation, is a Catholic college sponsored by the Sisters of the Presentation of the Blessed Virgin Mary. The college is governed by a Board of Trustees, the majority of whom are representatives of the Presentation Sisters, as required by the by-laws of the college. The Presentation Sisters historically serve the poor and the oppressed, particularly racial minorities.

Plaintiff began his employment at Presentation College in 1977, and continued to work there for fifteen consecutive years until 1992. During that time period, the college generally allocated plaintiff's time as follows: fifty percent to teaching, twenty-five percent to counseling, and twenty-five percent to chaplaincy, although the percentages varied at times. The Board of Trustees granted plaintiff an unpaid sabbatical leave during the 1984–85 school year. During that year, plaintiff obtained a certificate by completing "A Catholic Chaplain Clinical Pastoral Internship" at St. Elizabeth's Hospital in Washington, D.C. Plaintiff testified at his deposition that the Board granted five or six paid sabbatical leaves, prior to and after 1991, to other college employees, including Cindy Senger, Lynn Marie, Pam Donelan, and Annette Hoines.

On September 23, 1991, the Academic Dean of the college, Dr. Edward C. Stibili, sent a memorandum to the faculty stating that requests for sabbatical leave during the 1992–93 academic year should be submitted to him no later than November 4, 1991. The Personnel Manual of the college then in effect provided that "ordinarily only full-time faculty are eligible for sabbatical leave," although part-time faculty members could apply. The Personnel Manual required the applicant to file a request for leave, accompanied by a statement setting forth the purpose of the sabbatical, the type of scholarly activity anticipated, sources of extra income, and other pertinent information.

On the November 4 deadline, plaintiff submitted a "Tentative Plan" for sabbatical leave. Without distinguishing which program he wished to pursue, plaintiff set out three possibilities, including obtaining a Ph.D. in Educational Psychology, a Masters/Ph.D. in Theology, or a Sabbatical Certificate. Two female Caucasian faculty members also submitted requests for leave. Sherry Tebben, a 45-year old chemistry professor with eighteen years of experience with the college, requested leave at half salary to

complete her doctoral program. Her application is not included in the record. Connie Marheine, a 37–year old nursing instructor employed by the college approximately three years, requested leave for a two-year period to complete her Ph.D. in Nursing at the University of Kentucky. She asked the college to maintain her life and health insurance benefits and pay her a monthly stipend of $200 during the leave period. The college would then forgive the amount paid at the rate of 20 percent for each of the five years she would teach at the college upon her return.

Plaintiff does not dispute that, at the time of his sabbatical request, Presentation College sought, as one of its top priorities, to encourage faculty members to obtain terminal academic degrees in subject areas that would be of most benefit to the college. Plaintiff does not dispute that the college was seeking accreditation from the State Board of Nursing and the National Association of Nurses for a four-year bachelor's degree nursing program during the pertinent time frame. Previously, the college had offered only a two-year associate degree in nursing. Plaintiff does not dispute that one of the accreditation requirements was that nursing program faculty members upgrade their credentials by obtaining Ph.D. degrees in nursing.

On December 1, 1991, Dr. Stibili reviewed the applications and sent his observations to the President, Sister Bernadette Bodine. Dr. Stibili noted that plaintiff had received a previous unpaid sabbatical, that plaintiff had received "satisfactory, if uneven teaching evaluations from his students and supervisors[,]" and that plaintiff was qualified to make the request pursuant to the Personnel Manual. The same day, the Faculty Development Committee reviewed the three proposals. The Committee recommended approval of the requests submitted by Sherry Tebben and Connie Marheine. The Committee decided, however, that plaintiff's application placed the burden on the college and its Board of Trustees to determine what course of study plaintiff should follow. The Committee found that plaintiff's first suggestion did not fit the needs of the college at that time, the third option was not worth pursuing because it would result in the award of a certificate and not a terminal degree, and the second option was the only one of any benefit to the college. The Committee recommended denial of plaintiff's request, with the suggestion that plaintiff research his options more thoroughly and reapply the following academic year.

The Administrative Council then reviewed the proposals on December 19, 1991. This group consisted of the President, Academic Dean, Chief Financial Officer, Director of Resource Development, Mission Effectiveness Coordinator, Director of Admissions, and one faculty member. The Administrative Council recommended denial of the applications submitted by plaintiff and Tebben and recommended approval of Marheine's application.

In her recommendation to the Board of Trustees, the President indicated that the proposals submitted by plaintiff and Tebben did not meet the current needs of the college. The Board of Trustees met in executive session on January 12, 1992, and voted to deny plaintiff's and Tebben's applications and to grant Marheine's application. Marheine ultimately withdrew her proposal and did not take the leave approved.

The President notified plaintiff by letter dated January 27, 1992, that the Board of Trustees had denied his application without giving any reason. On appeal of plaintiff's grievance on the matter, the President notified plaintiff that the grievance procedure did not apply to decisions of the Board of Trustees and that the Board had discretion to give or refuse to give reasons for its decisions as it saw fit.

On March 25, 1992, plaintiff filed a charge of discrimination on the basis of race, national origin, gender, and age against the college with the South Dakota Division of Human Rights. He alleged that the college discriminated against him when it denied him a paid sabbatical leave. The state agency forwarded the charge to the Equal Employment Opportunity Commission (EEOC) because South Dakota does not have a statute covering age discrimination. On September 27, 1993, the EEOC determined that plaintiff's

charge was not supported by evidence and notified him of his right to sue.

In this action, plaintiff testified at his deposition that he applied for a position with Teikyo Marycrest University in Davenport, Iowa, his current employer, as well as with other universities, shortly after his sabbatical application was denied in January 1992. He further testified that he had periodically applied to other universities and sometimes interviewed for positions while employed at Presentation College because he was "indifferent" about his employment at Presentation College. Plaintiff does not dispute that, on April 15, 1992, Presentation College offered him a contract for the 1992–93 academic year at a salary of $32,213, a 4.6% increase over the previous year, and that he rejected this contract in favor of a contract for less salary at Teikyo Marycrest University.

Plaintiff testified at his deposition that he rests his claims of discrimination on the basis of race, national origin, and gender upon the "statistical evidence," that is, the "sheer number" of paid sabbaticals that the college granted to female, non-minority candidates. He further testified that age discrimination is apparent from all of the circumstances because he was 54 years old when the Board denied his sabbatical application in 1992, the same year the Board granted a paid sabbatical leave to an unqualified 37–year old woman. Plaintiff admitted that Lynn Marie, Pam Donelan, and Annette Hoines were all over 40 years of age when the Board granted their sabbatical applications, and only Connie Marheine and Cindy Senger were in their late thirties. Plaintiff also testified that Dr. Stibili told him that older employees did not need terminal degrees.

Plaintiff asserts that his claims of discrimination are further supported by evidence of harassment he suffered following denial of his sabbatical application in 1992, which ultimately caused his constructive discharge from employment at Presentation College in the spring of 1992. Plaintiff identifies as harassment a decision the college made, without his input, to replace the baccalaureate mass plaintiff usually conducted each spring with an ecumenical service that would more likely appeal to the sixty percent of students who were non-Catholic. Plaintiff testified, however, that the change in the service first occurred in 1991, before his sabbatical application was denied in 1992.

Plaintiff further testified that the college harassed him by allowing a nun to give the invocation at the graduation ceremony in 1992, when he had given the invocation in previous years. Plaintiff testified, however, that he had already applied for a position and signed a contract with Teikyo Marycrest University at the time commencement was planned and held. Plaintiff also complains that the last contract offered to him by Presentation College did not mention his chaplaincy and counseling duties. Plaintiff testified that he did not ask to discuss this change with any administrator. Sister Bernadette Bodine testified at her deposition that all employee contracts were changed in 1992 because the college had adopted separate handbooks for faculty, support staff, and administration, and each employee was placed in one of those categories. She testified that the college categorized plaintiff as full-time faculty because his service to the college best fit within the faculty category. She further testified that the college intended that plaintiff would continue his chaplaincy and counseling duties as before. Finally, plaintiff testified that the college harassed him because he asked for a fifteen-day extension in which to consider the last contract offered to him, but the President denied the extension. Sister Bodine testified that the college sent out all of the contracts late on April 15 and that she needed signed contracts back for planning purposes.

 In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court must consider the facts in the light most favorable to plaintiff, the non-moving party, and give him the benefit of all reasonable factual inferences. *See Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989). The Court may grant defendants' summary judgment motion only if there are no genuine issues of material fact for trial and defendants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91

L.Ed.2d 265 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ To meet his burden of showing a prima facie case of discrimination in the denial of a paid sabbatical leave under section 1981, Title VII, or the ADEA, plaintiff must show: that he belongs to a protected class; that he was qualified for the paid sabbatical leave; that the college denied his sabbatical application; and that the college awarded a sabbatical leave to a person with plaintiff's qualifications. *See Richmond v. Board of Regents,* 957 F.2d 595, 598 (8th Cir.1992) (affirming grant of summary judgment for defendants where plaintiff claimed violations of 42 U.S.C. § 1981, 1983, 1985, Title VII and ADEA). If plaintiff meets the burden of producing a prima facie case, the burden of production then shifts to defendants to articulate a legitimate, non-discriminatory reason for the denial of plaintiff's sabbatical application. *Id.* If defendants meet their burden of production, the presumption raised by the prima facie case is rebutted and drops from the case, and plaintiff must then demonstrate that defendants' proffered reasons were not the true reasons for the employment decision. *See St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Plaintiff always retains the ultimate burden to prove that defendants intentionally discriminated against him. *Id.*

■ Giving every benefit to plaintiff, the Court determines that plaintiff has established a prima facie case because plaintiff is a member of a protected class, he was qualified to apply for a paid sabbatical leave, the college denied his sabbatical application, and the same year the college awarded a leave of absence to a female Caucasian candidate with fewer years of service to the college than plaintiff. The Court further determines, however, that defendants' evidence rebuts the presumption raised by the prima facie case.

Defendants' evidence shows that the Faculty Development Committee, the Administrative Council, the Academic Dean, the President, and the Board of Trustees all believed that plaintiff's application was not sufficiently focused to permit a proper administrative decision on the application. Further, defendants' evidence shows that plaintiff's tentative suggestion that he could obtain a Ph.D. degree in Educational Psychology did not fit the needs of the college at that time, his third suggested option would have resulted only in the award of a certificate and not a terminal degree, and the second option, to obtain a Masters/Ph.D. degree in Theology, was the only option of any benefit to the college. The record shows that the college wanted to achieve a goal of upgrading the faculty in its nursing program, and none of plaintiff's proposals would have met that goal. The application of Connie Marheine did very specifically meet that goal, as she would have obtained a Ph.D. in Nursing and she would have returned to the college to teach in that subject area. Defendants' evidence shows that the Board of Trustees was willing to give Connie Marheine a leave of absence to pursue her Ph.D. degree in nursing, even though she did not have the number of years experience with the college that was ordinarily necessary to obtain sabbatical leave. Presentation College administrators and Trustees should have explained to plaintiff the reasons why his application was denied, and they should have communicated to plaintiff their encouragement for his reapplication the following academic year. The Court determines, however, that plaintiff has failed to produce any evidence to show that defendants' proffered reasons for their denial were not the true reasons or that Dr. Stibili's comment to plaintiff had any bearing upon the decision to deny the sabbatical. *See St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2747. Plaintiff has therefore produced insufficient evidence to permit a jury to find in his favor and summary judgment is warranted. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

■ Plaintiff asserts that the college harassed him following denial of his sabbatical leave and such behavior resulted in his constructive discharge. Plaintiff did not raise the constructive discharge issue before the EEOC and therefore, the issue is not

properly raised here. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222–23 (8th Cir.1994). Even assuming the claim is properly raised, a constructive discharge occurs when an employer deliberately renders an employee's working conditions intolerable and thereby forces him to quit his job. *Smith v. Goodyear Tire & Rubber Co.*, 895 F.2d 467, 472 (8th Cir.1990) (citing *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981)). Plaintiff must show that a reasonable person would find the conditions intolerable and that the employer created the conditions with the intent to force the plaintiff to quit. *Smith v. World Ins. Co.*, 38 F.3d 1456, 1461 (8th Cir.1994). Plaintiff can satisfy the intent requirement by demonstrating that he quit as a reasonably foreseeable consequence of the employer's discriminatory actions. *Id.; Hukkanen v. International Union of Operating Eng'r*, 3 F.3d 281, 285 (8th Cir.1993).

Although plaintiff points to certain events that he says are indicative of harassment, he fails to produce any evidence that Presentation College created the conditions with the intent to force him to quit, *see Smith*, 38 F.3d at 1461, or that he quit as a reasonably foreseeable consequence of the college's actions. Plaintiff does not dispute that the college offered him another contract with a 4.6% raise in salary in the spring of 1992 which he rejected in favor of other employment.

In light of the Court's decision to grant summary judgment for defendants on the federal claims, the Court finds that it does not have jurisdiction over the state law claims, as plaintiff does not allege any other appropriate basis for federal jurisdiction in his complaint. Accordingly,

IT IS ORDERED:

(1) that defendants' motion for summary judgment on the federal discrimination claims is granted. (Doc. 22.)

(2) that plaintiff's state law claims are dismissed for lack of jurisdiction.