**Bobby NAYLOR, Plaintiff,**

v.

**GEORGIA–PACIFIC CORPORATION, Defendant.**

No. C 93–3053.

United States District Court, N.D. Iowa, Central Division.

Jan. 31, 1995.

Kevin Fors, Parker & Fors, Fort Dodge, IA, for plaintiff.

Christopher Hoyme, Berens & Tate, P.C., Omaha, NE, for defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND ................................................. 569

II. FINDINGS OF FACT ...................................................... 569
 A. Undisputed Facts ................................................. 569
 B. Contested Facts .................................................. 571

III. STANDARDS FOR SUMMARY JUDGMENT ..................................... 571
IV. ANALYSIS ............................................................. 573
 A. Racial Discrimination Claims Under Iowa Code Ch. 216 ............. 573
 1. The Analytical Framework For Naylor's Claim of Racial Discrimination ....... 573
 a. The Prima Facie Case .................................... 574
 b. Legitimate, Non–Discriminatory Reason And Pretext ...................... 574
 2. Naylor's Prima Facie Showing ......................................... 575
 3. Non–Discriminatory Reasons for Georgia–Pacific's Actions ..................... 576
 4. Pretext for Discrimination ........................................... 576
 B. Retaliation Claim ................................................ 578
 1. Analytical Framework for Retaliation Claim .............................. 578
 2. Prima Facie Case ................................................. 578
 3. Non–Discriminatory Reasons for Firing and Pretext ....................... 579
 C. Offer of Reinstatement ........................................... 579
 1. Introduction ..................................................... 579
 2. Hostile Work Environment .......................................... 581

V. CONCLUSION ........................................................... 582

Defendant, a corporation which operates a gypsum mining and wall board production facility in Fort Dodge, Iowa, has moved for summary judgment on Plaintiff's state law claims of race discrimination, and retaliatory discharge. Plaintiff, a former employee of Defendant, claims he was discharged on the basis of race, and in retaliation for reporting acts of racial discrimination to a company equal employment opportunity officer. Defendant asserts that Plaintiff was terminated for a legitimate, non-discriminatory reason, that Plaintiff had an excessive number of absences which violated Defendant's absen-

tee policy. Defendant further requests that, because it offered to reinstate Plaintiff, the court alternatively toll Plaintiff's claim of wage damages from the date he was offered reinstatement.

## I. PROCEDURAL BACKGROUND

■ Plaintiff Bobby Naylor, an African–American male, filed his complaint in this matter in Iowa District Court for Webster County on July 2, 1993, alleging state law claims of race discrimination and retaliatory discharge. Defendant is Naylor's former employer, Georgia–Pacific Corporation ("Georgia–Pacific"). On July 30, 1993, Defendant removed this case to federal court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction. For jurisdiction to rest on 28 U.S.C. § 1332(a)(1), diversity of citizenship must be complete. No plaintiff may be a citizen of any state of which any defendant is a citizen. *See Strawbridge v. Curtiss*, 3 Cranch. 267 [7 U.S. 267], 2 L.Ed. 435 (1806). That is, *all* of the parties on one side of the lawsuit must be of diverse citizenship from *all* of the parties on the other side of the lawsuit. *Montana Mining Co. v. St. Louis Mining & Milling Co.*, 204 U.S. 204, 213, 27 S.Ct. 254, 255, 51 L.Ed. 444 (1907); *see also American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951).

■ The federal district courts have always been courts of limited jurisdiction. *See* U.S. CONST., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 *reh'g denied*, 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison*, 1 Cranch 137 [5 U.S. 137], 2 L.Ed. 60 (1803)); *see also Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169 (8th Cir.1994) (federal court jurisdiction limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold require-

ment of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO*, 962 F.2d 800, 802 n. 3 (8th Cir.1992); *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.*, 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n*, 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987). In this case, the court concludes that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Georgia–Pacific has now moved for summary judgment on all of Naylor's claims. Alternatively, Georgia–Pacific asserts that because it offered to reinstate Naylor to his former position, the court grant it partial summary judgment tolling Naylor's claims for wages from the date of Naylor's refusal to accept reinstatement. A hearing on Georgia–Pacific's motion was held on January 13, 1994. Georgia–Pacific was represented by Christopher Hoyme, Berens & Tate, P.C., Omaha, Nebraska. Naylor was represented by Kevin Fors, Parker & Fors, Fort Dodge, Iowa. The matter is now deemed fully submitted.

## II. FINDINGS OF FACT

### A. Undisputed Facts

For the purpose of this summary judgment motion only, the court finds the following facts:

1. Plaintiff Bobby Naylor is an African–American male who resides in Webster County, Iowa.

2. Defendant Georgia–Pacific is a corporation incorporated under the laws of the state of Georgia, and has its principal place of business in Atlanta, Georgia.

3. On September 6, 1988, Naylor began his employment with Georgia–Pacific. On the same date, Naylor signed an acknowledgement in which he indicated he had reviewed a number of policies and procedures required at Georgia–Pacific's operation.

4. Included among the policies that Naylor reviewed prior to commencing his employment with Georgia–Pacific was Georgia–

Pacific's "Absentee Control Program" ("the Program").[1]

5. The Program provides in pertinent part that a worker will receive one point for each occurrence of sickness. Workers can earn a point of credit if they have four consecutive work weeks without being either tardy or having been absent from the work place. The Program also provides for disciplinary measures. A worker receiving three points receives a first written warning. Upon attaining five points, a worker receives a second written warning. A final warning is issued if an employee receives seven points, and the employee is discharged if the employee attains nine points.

6. On March 1, 1989, Naylor received a first written warning dated February 28, 1989, which indicated he had reached the three points level.

7. On June 20, 1989, Naylor received a second written warning dated June 14, 1989, which indicated that he had five points. Naylor received another second written warning on August 22, 1989, which indicated he had five and one-half points. He received another such warning on September 20, 1989, indicating he had five and one-half points.

8. On December 16, 1989, Naylor was sent a final warning because he reached seven points. On August 14, 1990, Naylor was sent another final warning indicating he had eight and one-half points.[2]

9. As of August 19, 1990, Naylor had accumulated nine points. A meeting with Naylor was held on September 7, 1990, and Georgia–Pacific decided to lower Naylor's point total to seven points due to an injury Naylor suffered and because of a court appearance he was required to attend. A letter dated September 7, 1990, documented these events.[3] It then went on to state:

This letter will serve as a final notice under our program. No further consideration will be given to any absences prior to August 19, 1990. If you reach nine points again, you will be subject to termination.

. . . . .

In your two years of employment, you have already reached the last step under the program and have received two final warnings. We expect you to improve your attendance and hope that you realize that your job is in jeopardy.

10. On October 23, 1990, he received another final warning which indicated Naylor had seven and one-half points. Naylor subsequently received five additional final warnings dated April 14, 1991, August 7, 1991, October 23, 1991, March 5, 1992, and September 21, 1992.

11. On October 2, 1992, Naylor complained to Georgia–Pacific's Equal Employment Opportunity compliance officer at the Fort Dodge plant concerning the way he had been treated under the Program.

12. Naylor was terminated on October 8, 1992, after attaining nine points on October 6, 1992.[4]

13. On November 3, 1992, Georgia–Pacific agreed to a settlement offer proposed by Naylor's union in which it offered to reinstate Naylor to his former position. The offer of reinstatement further offered to bridge Naylor's seniority, service credits, and benefits from the time of his termination. Finally, the offer of reinstatement provided that Naylor's absentee/tardy calendar would be reduced to the same level Naylor had occupied on August 30, 1993, seven and one-half points.[5]

1. A copy of the Absentee Control Program is attached to Georgia–Pacific's brief as exhibit "C".

2. As indicated above, because a worker receives a "final warning" each time that worker reaches seven points, a worker can receive multiple final warnings.

3. The September 7, 1990, letter is attached to Georgia–Pacific's brief as exhibit "F".

4. The notice of termination is dated October 8, 1992, and notes that Georgia–Pacific reviewed Naylor's employment record on October 6, 1992, and again on October 7, 1992. The notice further notes that Naylor was notified by phone on October 8, 1992.

5. A copy of the November 3, 1992, correspondence is attached to Georgia–Pacific's brief as exhibit "H".

14. Naylor did not accept the November 3, 1992, offer of reinstatement.

15. On December 16, 1992, Georgia–Pacific offered to reinstate Naylor under the same terms as the November 3, 1992, offer of reinstatement. Under this offer, Naylor had until December 21, 1992, to report back to work.

16. Naylor did not accept the December 16, 1992, offer of reinstatement.

17. Naylor's position with Georgia–Pacific was filled by an African–American male.

### B. Contested Facts

1. Whether the Program was applied to Georgia–Pacific's white or hispanic employees in the same manner that it was applied to its African–American employees.

2. Whether racist jokes, and comments were made by Naylor's co-workers, Gloria Pringle, Kevin Grall, and Jerry Michehl.

3. Whether Naylor reported racist comments to his supervisors and the plant manager, or gave a racist cartoon he found to his supervisor Doug Attig.

4. Whether a target depicting an African–American individual was displayed at the work site.

5. Whether Naylor chose not to accept either of the offers of reinstatement because of the work site racial hostility, or because the offers of reinstatement did not offer him back wages.

### III. STANDARDS FOR SUMMARY JUDGMENT

 The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper show-

ings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

 The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing Fed.R.Civ.P. 56(c)).[6] A court considering a motion for summary judgment must

---

6. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

view all the facts in the light most favorable to the nonmoving party, here Naylor, and give him the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party, Georgia–Pacific, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Georgia–Pacific is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Naylor is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)),

*cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

■ In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Naylor fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then Georgia–Pacific is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247.

■ The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases. *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994); *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). Summary judgment is

appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the non-movant. *Id.* (holding that there was a genuine issue of material fact precluding summary judgment); *Johnson,* 931 F.2d at 1244. With these standards in mind, the court turns to consideration of Georgia–Pacific's motion for summary judgment.

## IV. ANALYSIS

### A. Racial Discrimination Claims Under Iowa Code Ch. 216

■ The court initially notes that Iowa courts routinely look to federal cases under Title VII for guidance in disposition of discrimination claims under Iowa Code Ch. 216. *See, e.g., Boelman v. Manson State Bank,* 522 N.W.2d 73, 77 (1994) (recognizing that Iowa court has previously looked to federal cases interpreting Title VII for guidance in applying chapter 601A (now 216)); *Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512, 516 (1990) (noting that Iowa court had previously adopted framework of analysis for disparate treatment claim under Iowa Code Ch. 601A from United States Supreme Court cases in *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336 (Iowa 1989)); *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 894 (Iowa 1990) (noting that the Iowa Supreme Court has previously applied federal principles and analytical framework to civil rights cases under Iowa Code Ch. 216); *Hulme v. Barrett,* 449 N.W.2d 629, 633 (Iowa 1989) (Iowa court is guided by federal law in analysis of civil rights cases under Iowa Code Ch. 601A); *Annear v. State,* 419 N.W.2d 377, 379 (Iowa 1988) (recognizing that Iowa Code Ch. 601A is patterned after Title VII, and adopting principles found in federal cases under the federal law); *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983) (same); *Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'n,* 322 N.W.2d 293, 296 (Iowa 1982) (adopting principles stated in federal Title VII disparate treatment cases for analysis of claims under Iowa Code Ch. 601A). The court will therefore look to federal case law applying the framework for analysis first identified in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Hy–Vee Food Stores,* 453 N.W.2d at 516–17.

### 1. The Analytical Framework For Naylor's Claim of Racial Discrimination

■ In employment discrimination cases based on circumstantial evidence, courts apply the analytical framework of shifting burdens developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), and most recently in *St. Mary's Honor Ctr. v. Hicks,* — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1108 (8th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994).

■ Under *McDonnell Douglas* and its progeny, the employment discrimination plaintiff has the initial burden of establishing a *prima facie* case of discrimination by producing evidence that would entitle him to prevail unless contradicted and overcome by evidence produced by the defendant. *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 435 (8th Cir.1993). If a *prima facie* case is established, the burden then shifts to the employer to rebut the presumption by producing evidence that the employer made the questioned employment decision for a legitimate, non-discriminatory reason. *Id.* The employer's explanation of its actions must be "clear and reasonably specific," *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096, but the employer's burden of production has nonetheless been held to be "exceedingly light." *Batey v. Stone,* 24 F.3d 1330, 1334 (11th Cir. 1994) (citing *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994)). If the employer meets this burden of production, the legal presumption that would justify a judgment as a matter of law based on the

plaintiff's *prima facie* case "simply drops out of the picture," and the plaintiff bears the burden of persuading the finder of fact that the proffered reasons are pretextual and that the employment decision was the result of discriminatory intent. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749. The Supreme Court has made clear that the ultimate inquiry is whether the employer intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 436 (8th Cir.1993). However, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749 ("The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination.").

■ *a. The Prima Facie Case.* Under the *McDonnell Douglas* analysis, the plaintiff's usual burden to establish a *prima facie* case of employment discrimination is to show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job he or she was performing; (3) the plaintiff suffered adverse employment action, or was discharged; and (4) a nonmember of the protected class replaced the plaintiff or was not subjected to the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Elliott v. Montgomery Ward & Co.,* 967 F.2d 1258, 1260 (8th Cir. 1992). The Supreme Court noted that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie case proof required from [the plaintiff] is not necessarily applicable in every respect in differing factual situations." *Id.,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

■ To prove a disparate treatment claim, the plaintiff must show that he or she was "similarly situated in all relevant respects" to a non-member of the protected class who was more favorably treated. *Lanear v. Safeway Grocery,* 843 F.2d 298, 300 (8th Cir.1988) (citing *Smith v. Monsanto*

*Chem. Co.,* 770 F.2d 719, 722 (8th Cir.1985), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986)). In order to determine whether a plaintiff has shown that the employees involved were "similarly situated" for purposes of establishing a *prima facie* case, the court considers whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1309 (8th Cir.1994); *Boner v. Board of Comm'rs of Little Rock Mun. Water Works,* 674 F.2d 693, 697 (8th Cir.1982). It is not up to the employer to prove dissimilarity. *Lanear,* 843 F.2d at 301 (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093); *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1254 (8th Cir.1981). Where a plaintiff establishes a *prima facie* case of disparate treatment, if the defendant presents a legitimate, non-discriminatory reason for the disparate treatment, and the plaintiff cannot demonstrate a material question of fact, the defendant is entitled to summary judgment. *Pierce v. Marsh,* 859 F.2d 601, 603 (8th Cir.1988).

■ *b. Legitimate, Non–Discriminatory Reason And Pretext.* In the second stage of the analysis, if the employer articulates a reason sufficient to rebut a *prima facie* case, the inquiry proceeds to a "new level of specificity." *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 436 (8th Cir. 1993) (citing *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095). In the third stage of the analytical framework, the plaintiff is entitled to the opportunity to show that the stated reason for the employer's action was "in fact pretext." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). The plaintiff can show pretext either "by persuading the court that a discriminatory reason more likely motivated the employer or . . . by showing that the employer's proffered explanation is unworthy of credence." *Id.* (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). "In short, the district court must decide which party's explanation of the employer's motivation it believes." *Id.* (citing *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482). The sufficiency of evidence to support a factfin-

der's determination of discrimination was described in *St. Mary's:*

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and ... [n]o additional proof of discrimination is *required.*

*St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749; *see Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 971 (8th Cir.1994); *Equal Employment Opportunity Comm'n v. Cherry–Burrell Corp.,* 35 F.3d 356, 361 (8th Cir. 1994); *Gaworski,* 17 F.3d at 1109.

### 2. Naylor's Prima Facie Showing

■ Georgia–Pacific initially asserts that Naylor cannot meet his *prima facie* showing because Georgia–Pacific replaced him with an African American worker. Naylor, however, asserts that an issue of material fact has been generated regarding whether the Program was employed in a discriminatory manner.

Upon review of the materials submitted by the parties, the court concludes that Naylor has established the existence of a material fact question with regard to the establishment of a *prima facie* case of race discrimination. There can be no question that Naylor, an African–American male, is a member of a protected class, or that he was terminated by Georgia–Pacific. Furthermore, Georgia–Pacific does not question Naylor's qualifications for the job he was performing.[7] Therefore, three of the four prongs necessary for establishment of a *prima facie* case have been met here.

■ The only question remaining is whether the fourth part of the test has been met here. On this issue, Georgia–Pacific seeks to frame the issue solely as a question of whether Naylor was replaced by a member or non-member of his protected class. Georgia–Pacific argues that because Naylor's replacement was an African–American male, Naylor cannot prove his *prima facie* case.[8] This argument, however, completely ignores the fact that a plaintiff may prove the fourth prong of a *McDonnell Douglas prima facie* case of employment discrimination by demonstrating that he or she was subjected to an adverse employment action while nonmembers of the plaintiff's protected class were not subjected to the same actions. Furthermore, the Eighth Circuit has consistently held in Title VII cases that proof that the plaintiff was replaced by a person outside the protected class is not required. *Davenport v. Riverview Gardens Sch. Dist.,* 30 F.3d 940, 944–45 (8th Cir.1994) ("[w]hile proof of replacement by a person outside the protected class will satisfy the fourth element, it is now well settled that such proof is not required."); *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 (8th Cir.1994) (holding that no such per se requirement has traditionally been imposed); *see Walker v. St. Anthony's Med. Ctr.,* 881 F.2d 554, 558 (8th Cir.1989) (in sex and age discrimination case court held that "[t]itle VII has been interpreted to require only that, in addition to the first three elements of a *prima facie* case, the plaintiff demonstrate that his or her discharge occurred in 'circumstances which allow the court to infer unlawful discrimination.'"). In both *Davenport* and *Williams,* the Eighth Circuit specifically held that the district court in each case erroneously required the plaintiff to show he was replaced by someone outside the protected class in order to establish the fourth element of his *prima facie* case. *See Davenport,* 30 F.3d at 944 (holding that district court erred in finding that plaintiff failed to establish the fourth element of *prima facie* case when "the district court erroneously believed that plaintiff was required to prove that he was replaced by someone outside his protected class."); *Williams,* 14 F.3d at 1308 (holding that district court erred in concluding the plaintiff

---

7. Georgia–Pacific, nevertheless, does assert that Naylor was discharged for violating its absenteeism program.

8. Georgia–Pacific cites only a Texas district court decision, *Alexander v. Frank,* 777 F.Supp. 516, 520 (N.D.Tex.1991), in support of this proposition.

had failed to establish a *prima facie* case of racial discrimination because he had not shown that his employer sought persons outside the plaintiff's protected group to fill his job after he was discharged). Although such evidence is probative of the ultimate issue of intent to discriminate, it is not a *per se* requirement, and therefore need not be demonstrated in order for a plaintiff to establish a *prima facie* case. *See Davenport*, 30 F.3d at 944; *Williams*, 14 F.3d at 1308; *see also Walker*, 881 F.2d at 558 ("no such per se requirement"); *cf. Rinehart v. City of Independence*, 35 F.3d 1263, 1266 (8th Cir.1994) (holding that *prima facie* case of age discrimination does not require showing that replacement came from outside protected class); *Diaz v. American Telegraph & Telephone*, 752 F.2d 1356, 1359 (9th Cir.1985) (holding in age discrimination case that fact that person from same protected class as plaintiff received promotion did not prevent plaintiff from establishing *prima facie* case); *Powell v. Bob Downes Chrysler–Plymouth, Inc.*, 865 F.Supp. 1340, 1350 (E.D.Mo.1994) (holding that plaintiff in religious discrimination case need not establish that the employer sought a person outside of plaintiff's protected group to fill position after plaintiff's discharge). Here, Naylor has generated a material fact question regarding the fourth part of the test by demonstrating that non-African American workers were not subjected to termination even though they had accumulated nine or more points in the Program.

### 3. Non–Discriminatory Reasons for Georgia–Pacific's Actions

 Georgia–Pacific next contends that even if Naylor can establish his *prima facie* case of discrimination, it is able to meet its burden of articulating a legitimate, nondiscriminatory reason for its adverse employment decision. Here, Georgia–Pacific asserts that its decision to terminate Naylor's employment was because of Naylor's violation of the Program. A violation of a company rule can constitute a legitimate, non-discriminatory reason for decision to terminate an employee. *Williams*, 14 F.3d at 1309.

### 4. Pretext for Discrimination

 Because Georgia–Pacific has responded to Naylor's *prima facie* case with evidence of a legitimate nondiscriminatory reason for the challenged discharge, Naylor retains

> the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination. [He] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Here, because Naylor has presented no direct evidence of intentional discrimination, the critical summary judgment inquiry is whether he came forward with sufficient evidence that Georgia–Pacific's nondiscriminatory reason is pretextual, that is, " 'unworthy of credence,' to permit the trier of fact to find that a discriminatory or retaliatory reason motivated the discharge." *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 971 (8th Cir. 1994). This is the critical inquiry because:

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination. . . ."

*Id.* (quoting *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2749) (emphasis in original).

 Georgia–Pacific contends that Naylor's allegations of disparate treatment are unsupported in the record, and that the facts do not support Naylor's assertion that white and hispanic employees of Georgia–Pacific were treated differently under the Program than its African–American employees. In opposing Georgia–Pacific's motion for summary judgment, Naylor has produced evidence of pretext in the form of instances of disparate treatment in which Georgia–

Pacific allegedly failed to discipline or terminate similarly situated non-African American employees for violations of company policy. Instances of disparate treatment can support a claim of pretext. *Id.* at 972; *see Williams*, 14 F.3d at 1309; *Jones v. Frank*, 973 F.2d 673, 676 (8th Cir.1992); *Smith*, 770 F.2d at 723. Naylor, however, has the burden of proving that he and the disparately treated non-African Americans were similarly situated.[9] *See Harvey*, 38 F.3d at 972; *Williams*, 14 F.3d at 1309; *Jones*, 973 F.2d at 676; *Smith*, 770 F.2d at 723. This factually intensive act is accomplished by comparing plaintiff's characteristics, such as job position and duties, employment history and the nature of the employment action giving rise to the lawsuit, with that of the identified co-employees. *See, e.g., Harvey*, 38 F.3d at 972 (holding, where plaintiff's only evidence of pretext was a recitation of instances in which defendant employer allegedly disciplined white employees less severely for exercising bad judgment, instances in which white employees were allegedly disciplined less severely were not sufficiently similar to plaintiff's circumstances, in which plaintiff failed to assist person in life threatening distress, failed to raise a triable issue of pretext); *Williams*, 14 F.3d at 1309 (finding that record was devoid of any evidence that any of white employees granted reinstatement waivers were similarly situated to defendant or other African–American employees who did not receive reinstatement waivers); *Jones*, 973 F.2d at 676 (holding that plaintiff failed to prove that given reason for her discharge was pretextual where plaintiff failed to prove she was similarly situated with three male postal workers from a different post office with different supervisors than plaintiff); *Adams v. Nolan*, 962 F.2d 791, 795 (8th Cir.1992) (holding in disparate treatment case that district court erroneously found that plaintiff was not similarly situated where plaintiff and four other officers all sought lighter work assignments than their regular duties as a result of physical impairments that were unrelated to their jobs); *Smith*, 770 F.2d at 723 (concluding that where all nine similarly situated employ-

ees were terminated, a reasonable jury could not have found on the basis of statistical evidence that employer discriminated against plaintiff on the basis of race); *Talley v. United States Postal Serv.*, 720 F.2d 505, 507 (8th Cir.1983) (finding that plaintiff, who was a temporary casual employee, was not similarly situated to other employees, career employees who were subject to a different disciplinary system), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984); *Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2d Cir.1994) (holding that plaintiff was not similarly situated to eight of ten identified employees because they either held a different occupational status, or engaged in conduct different from that attributed to plaintiff); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994) (finding that plaintiff failed to show he was similarly situated where he was a supervisor who had responsibility over three offices whereas other employee was an office administrator with no supervisory control over other employees); *Pagano v. Frank*, 983 F.2d 343, 348 (1st Cir.1993) (plaintiff of Italian decent was not similarly situated to co-employee of Irish decent where plaintiff had a substantially longer and more varied history of attendance problems and had failed to alter his conduct after receiving formal warnings). The Eight Circuit has pointed out that "[e]mployees are similarly situated when they" "are involved in or accused of the same offense and are disciplined in different ways." *Harvey*, 38 F.3d at 972 (quoting *Boner v. Board of Comm'rs*, 674 F.2d 693, 697 (8th Cir.1982)).

The court's difficulty in addressing whether Naylor and the non-African American co-workers he identifies in his memorandum as receiving disparate treatment were similarly situated lies in the fact that neither party has addressed this issue. Upon review of the exhibits submitted by the parties, the court concludes that Naylor has generated a material question of fact as to whether he is similarly situated with non-African American employees Ron Guerin and Mary Guerra. The court bases this determination upon the

---

9. It is not up to Georgia–Pacific to prove dissimilarity. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Hayes v. Invesco, Inc.*, 907 F.2d 853, 855 (8th Cir.1990); *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir.1988); *Bunny Bread Co.*, 646 F.2d at 1254.

fact that Guerin, Guerra, and Naylor were all employees of Georgia–Pacific at its Fort Dodge facility during the time of Naylor's employment, and were all subject to the Program.

The court further concludes that a material fact question has been generated as to whether Guerrin and Guerra were given preferential treatment with regard to the assignment of points under the Program. The court notes that in its answer to Plaintiff's Interrogatory number 13, Georgia–Pacific identifies the following four individuals who reached point totals of nine points under the Program during the period of Naylor's employment: Naylor, Pearl Wilson, Willie Green, and Hasson Hameed. All four individuals are African–Americans. With the exception of Wilson, all of these individuals were eventually terminated under the Program. Ed Rash, Georgia–Pacific's personnel/safety manager at the Fort Dodge facility states in his affidavit that Mary Guerra, a white female, did not reach nine points under the Program.[10] Naylor, however, has submitted the absentee/tardy calendars for Guerra, Guerrin, and other Georgia–Pacific employees. These calendars appear to show that Guerra and Guerrin both reached nine points during the period of Naylor's employment with Georgia–Pacific. Why Guerrin is not listed in Georgia–Pacific's answer to interrogatory number 13 is not explained by Georgia–Pacific in its reply brief. Nor does Georgia–Pacific explain the apparent discrepancy between the assertion found in Rash's affidavit that Guerra never accumulated nine points under the program and the notations on her absentee/tardy calendars that she had accumulated nine or more points on a number of occasions in 1989 and 1990.[11] The court, therefore, concludes that a material question of fact has been generated on the question of whether Georgia–Pacific has engaged in disparate treatment of its African–American workers under the Program. This in turn creates a material fact question as to whether Georgia–Pacific's stated reason for discharging Naylor was in fact a pretext.

The court, therefore, will deny this portion of Georgia–Pacific's motion for summary judgment.

## B. Retaliation Claim

### 1. Analytical Framework for Retaliation Claim

■■■ Georgia–Pacific further moves for summary judgment on Naylor's claim of retaliatory firing in violation of Iowa Code chapter 216. Naylor bears the initial burden of establishing a *prima facie* case of reprisal. This burden requires Naylor to show: 1) he was engaged in statutorily protected activity; 2) he suffered adverse employment action; and 3) a causal connection between the two. *Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989); *Gary v. Heritage Nat. Healthplan Serv., Inc.*, 485 N.W.2d 851, 856 (Iowa Ct. App.1992); *see also Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir.1980) (applying same standard), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); *Jackson v. Saint Joseph State Hosp.*, 840 F.2d 1387, 1390 (8th Cir.), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). Once Naylor succeeds in making a *prima facie* case, the burden shifts to Georgia–Pacific to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Gary*, 485 N.W.2d at 856; *Womack*, 619 F.2d at 1296.

If Georgia–Pacific establishes such a reason for firing Naylor, the ultimate burden of persuading the trier of fact that Georgia–Pacific fired Naylor in retaliation for asserting his rights under Iowa Civil Rights Act remains with Naylor, and he must show by a preponderance of the evidence that the articulated reason was pretextual. *See Gary*, 485 N.W.2d at 856.

### 2. Prima Facie Case

■■■ The Eighth Circuit Court of Appeals has applied the same three-prong *prima facie* showing that the Iowa courts apply in

---

10. Rash's affidavit is attached to Georgia–Pacific's memorandum as Exhibit "K". Rash's affidavit does not mention Guerin.

11. Neither party has undertaken any effort to explain how the absentee/tardy calendars were kept nor how adjustments in an employee's point total was determined.

considering retaliation claims in a variety of employment retaliation cases. *See, e.g., Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir.1993) (three-prong *prima facie* showing of retaliation for reporting violations to OSHA); *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992) (same three-prong showing in ERISA retaliation case); *Valdez v. Mercy Hosp.*, 961 F.2d 1401, 1403 (8th Cir.1992) (same showing in case alleging retaliatory discharge for filing Title VII race discrimination claim); *Tart v. Levi Strauss and Co.*, 864 F.2d 615, 617 (8th Cir.1988) (same showing in case alleging retaliation for filing a sex discrimination claim with the EEOC); *Jackson v. Missouri Pac. R.R. Co.*, 803 F.2d 401, 406–07 (8th Cir.1986) (same showing for retaliation for filing race discrimination claims under § 1981 and § 2000e); *Benson v. Little Rock Hilton Inn*, 742 F.2d 414, 416 (8th Cir.1984) (retaliation claims brought under § 1981 require same three-prong *prima facie* showing as those brought under Title VII); *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980), (same showing in case alleging retaliation for filing a Title VII complaint of race discrimination), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

Here, Georgia–Pacific does not dispute that Naylor's act of filing a complaint with plant's equal employment opportunity officer concerning racial discrimination constitutes protected activity, nor that he was subsequently subjected to an adverse employment action. Naylor has therefore shown two of the necessary prongs for establishing a *prima facie* case of retaliation.

The third prong of the showing, causal connection, may be met, for example, by "proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Schweiss*, 987 F.2d at 549 (quoting *Rath*, 978 F.2d at 1090) (discharge followed report to OSHA by only four days); *see also Rath*, 978 F.2d at 1090 (stating standard, but expressing doubt that discharge six months after alleged whistle-blowing met causal connection requirement); *Couty v. Dole*, 886 F.2d 147, 148 (8th Cir.1989) (discharge thirty days after protected activity was sufficient temporal proximity for causal connection); *Keys v.*

*Lutheran Family and Children's Serv. of Mo.*, 668 F.2d 356, 358 (8th Cir.1981) (less than two months sufficient proximity for causal connection); *Womack*, 619 F.2d at 1296 (twenty-three days sufficient proximity for causal connection).

In the present case, Naylor has demonstrated the temporal proximity between his challenges to conduct he believed to be racial harassment in Georgia–Pacific's Fort Dodge facility and his employment termination. On October 2, 1992, Naylor asserts he complained to Georgia–Pacific's Equal Employment Opportunity compliance officer concerning the way he had been treated under the Program. Less than one week later, on October 8, 1992, Naylor was terminated allegedly for violating the Program. This closeness in time between Naylor's discharge and his complaint to the equal employment opportunity officer creates an inference of a retaliatory motive on the part of Georgia–Pacific. Therefore, Naylor has established at least a genuine issue of material fact on the elements of his *prima facie* case of retaliation.

### 3. Non–Discriminatory Reasons for Firing and Pretext

Georgia–Pacific reiterates the contention it raised above that even if Naylor can establish his *prima facie* case of retaliatory firing, Georgia–Pacific has met the second part of the test by articulating a legitimate, non-discriminatory reason for its decision to terminate Naylor's employment. Again Georgia–Pacific asserts Naylor was terminated because of absenteeism in excess of that permitted under the Program. Although Georgia–Pacific has come forward with a legitimate, non-discriminatory reason for its decision to fire Naylor, this does not resolve the material fact question identified above concerning whether Georgia–Pacific has engaged in disparate treatment of its African-American workers under the Program. Therefore, summary judgment on Naylor's claim of retaliatory firing will also be denied.

### C. Offer of Reinstatement

### 1. Introduction

Finally, Georgia–Pacific has also moved for summary judgment to limit Nay-

lor's back and front pay damages by asserting that on November 3, 1992, and December 16, 1992, it tendered to Naylor unconditional offers of reinstatement. In *Ford Motor Co. v. Equal Employment Opportunity Comm'n,* 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982), the United States Supreme Court held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential back pay liability." *See, e.g., Morris v. American Nat'l Can Corp.,* 952 F.2d 200, 202 (8th Cir.1991). Although this rule was fashioned in the Title VII context, the court has no doubt it applies with equal force under Iowa law because it is consistent with the duty to mitigate damages required by the Iowa Civil Rights Act. *See Children's Home of Cedar Rapids v. Cedar Rapids Civil Rights Comm'n,* 464 N.W.2d 478, 481 (Iowa Ct.App.1990) (noting that Iowa Code § 601A.15(8)(a)(1) (now § 216.15(8)(a)(1)) imposes a duty to mitigate similar to that found in section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g)); *Hamer v. Iowa Civil Rights Comm'n,* 472 N.W.2d 259, 265 (Iowa 1991) (holding that administrative judge incorrectly considered issue of mitigation of damages where defendant failed to first raise it).

█ Naylor's obligation "to accept an offer of reinstatement is based on the general rule that a discharged employee must mitigate damages by using 'reasonable diligence in finding other suitable employment'." *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1202 (7th Cir.1989) (citing *Ford Motor Co.,* 458 U.S. at 231, 102 S.Ct. at 3065). Under the Iowa Civil Rights Act a claimant wrongfully discharged must use "reasonable care and diligence" to mitigate damages. *Children's Home of Cedar Rapids,* 464 N.W.2d at 481 (holding that a claimant is "required to make every reasonable effort to mitigate damages ..."); *see also Glass v. IDS Fin. Serv., Inc.,* 778 F.Supp. 1029, 1075 (D.Minn.1991) (citing *Fiedler v. Indianhead Truck Line, Inc.,* 670 F.2d 806, 809 (8th Cir.1982)).

Georgia–Pacific asserts that the November 3, 1992, letter from Claude Gepfort, vice-president of O.C.A.W. Local 6–503, to Georgia–Pacific in which Gepfort communicated the union's settlement offer and to which Georgia–Pacific agreed, constitutes an unconditional offer of reinstatement as defined by *Ford Motor Co.,* 458 U.S. 219, 102 S.Ct. 3057. This letter stated:

This will document the Union's settlement offer in the above matter.

1. Mr. Naylor will be returned to his former position, no later than Monday, November 9, 1992.

2. Mr. Naylor's discharge will be converted to an unpaid leave of absence for the period of time that he is off.

3. Mr. Naylor's seniority, service credits, and benefits will be bridged for that same period of time.

4. Mr. Naylor's absentee/tardy calendar will be adjusted to the level he was at on August 20, 1992, 7½ points.

Both Gepfort and Georgia–Pacific's J.P. Wassenburg signed the agreement, but Naylor refused to agree to its terms. Subsequently, in a letter dated December 16, 1992, Gepfort wrote to Naylor as follows:

Dr. Bob,

This will confirm my recent telephone conversation with you regarding the above matter. You have been informed of the membership's action at the December monthly regular meeting, not to arbitrate grievance 92–6. In a final effort to retain your employment with Georgia–Pacific, the Union requested the company extend your return to work date on Monday, December 21, 1992, from the original settlement offer dated November 3, 1992, copy enclosed. The company has agreed on the basis that you report on the Monday, December 21, 1992, to the board plant. You should report your decision to J.P. Wassenburg beforehand to get any details, or contact me at home, or at the plant if you have any questions.

█ Naylor initially asserts that a fact question exists as to whether either offer was an unconditional offer of reinstatement. At the hearing on the motion for summary judgment, Naylor's counsel all but conceded that the offer of reinstatement was unconditional. The court holds that the November 3, 1992,

letter constitutes an unconditional offer of reinstatement. Naylor asserts that because of the provision that his absentee/tardy calendar would be adjusted back to the level Naylor was at on August 20, 1992, seven and one-half points, the offer of reinstatement was not unconditional. Naylor cites no authority for this legal proposition. An offer of reinstatement tolls the accrual of backpay only if it " 'affords the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status.' " *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1203 (7th Cir. 1989) (quoting *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 624 (6th Cir. 1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1986)).

"Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement." *Fiedler,* 670 F.2d at 808. "Whether an offer was unconditional for purposes of mitigation is similarly a question for the trier of fact." *Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 830 (2nd Cir.1992). The Supreme Court recognized in *Ford Motor Co.* that a claimant's obligation to accept an offer of reinstatement was not absolute. "The claimant's obligation to minimize damages in order to retain his right to compensation does not require him to settle his claim against the employer, in whole or in part. Thus an applicant or discharged employee is not required to accept a job offered by the employer *on the condition that his claims against the employer be compromised.*" *Ford Motor Co.,* 458 U.S. at 232 n. 18, 102 S.Ct. at 3066 n. 18 (emphasis added). Here, however, there was no condition placed on Naylor's reinstatement. Naylor was required in no way to compromise any claim he had against Georgia–Pacific in order to get his job back. *See Figgs v. Quick Fill Corp.,* 766 F.2d 901, 903 (5th Cir.1985) (holding that employer who made offer of reinstatement which was bona fide and not conditioned on plaintiff dropping her claim of discrimination constituted unconditional offer of reinstatement which tolled accrual of back pay). Georgia–Pacific's offer placed no qualifications on Naylor's return. *See Clarke v. Frank,* 960 F.2d 1146, 1151 (2nd Cir.1992)

(holding that offer was unconditional where it placed no qualifications on plaintiff's reinstatement, aside from standard prerequisites that plaintiff pass driver's test and physical examination); *Orzel v. City of Wauwatosa Fire Dep't,* 697 F.2d 743, 757 (7th Cir.) (holding that defendant's offer to reinstate plaintiff which was expressly conditioned on plaintiff taking and passing a physical examination was not unconditional where acquiescence in the demand for a physical examination might jeopardize plaintiff's legal position), *cert. denied,* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983). Nor did Georgia–Pacific require some change in Naylor's work schedule in order for him to return to work. *See Equal Employment Opportunity Comm'n v. Accurate Mechanical Contractors, Inc.,* 863 F.Supp. 828, 835–36 (E.D.Wis. 1994) (holding that offer to reinstate plaintiff to night shift was unreasonable where night shift position was not identical to the day shift position that had been illegally denied plaintiff). In contrast, by adjusting Naylor's point total under the Program, Georgia–Pacific merely placed Naylor back in the same position he occupied on August 20, 1992. The offer did not request or require that he waive any claims he might have that the Program was being operated in a discriminatory manner. *See Morris,* 952 F.2d at 203 (holding that employer's requirement that employee undergo physical examination before returning to work did not render offer conditional); *Ford Motor Co.,* 458 U.S. at 232, 102 S.Ct. at 3066 (holding that "an employer's unconditional offer of the job originally sought ... need not be supplemented by an offer of retroactive seniority ..."). Thus, the court concludes that Georgia–Pacific's offers of reinstatement were unconditional.

### 2. Hostile Work Environment

The rejection of an unconditional offer of reinstatement, however, will not toll backpay liability if a "special circumstance" or valid reason exists for plaintiff's refusal to accept the offer. *See Smith v. World Ins. Co.,* 38 F.3d 1456, 1464 (8th Cir.1994); *Morris,* 952 F.2d at 203; *Taylor v. Teletype Corp.,* 648 F.2d 1129, 1139 (8th Cir.), *cert.*

*denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981); *see also Lewis v. Federal Prison Indus., Inc.,* 953 F.2d 1277, 1279 (11th Cir.1992) (holding in case of constructive discharge that plaintiff's rejection of offer of reinstatement was reasonable where the discriminatory work environment caused "acute agitated depression"). A plaintiff's refusal to accept an offer of reinstatement is measured by an objective standard: whether a reasonable person would refuse the offer of reinstatement. *Morris,* 952 F.2d at 203 (citing *Fiedler,* 670 F.2d at 808); *see Smith,* 38 F.3d at 1464. Here, Naylor asserts that because of the racially hostile atmosphere at Georgia–Pacific's Fort Dodge plant, he could reasonably decline the offer of reinstatement. The court concludes that a question of material fact has been created concerning whether exceptional circumstances have been established which would warrant Naylor's refusal of Georgia–Pacific's offer of reinstatement. Naylor has established a material fact question as to whether it was reasonable for him not to accept the offer of reinstatement because of a fear of continued racial harassment at Georgia–Pacific's Fort Dodge plant. A reasonable concern of continued harassment may constitute an exception under *Ford Motor Co. See Smith,* 38 F.3d at 1464; *Maturo v. National Graphics, Inc.,* 722 F.Supp. 916, 922 (D.Conn.1989) (holding that plaintiff's rejection of offer of reinstatement was reasonable where she had been subjected to discriminatory working conditions and offer lacked any serious pledge that she would not be subjected to further harassment); *cf. Morris,* 952 F.2d at 203 (holding that plaintiff's refusal of offer was not objectively reasonable where employer was prepared to protect plaintiff from further harassment).

In *Smith,* the Eighth Circuit held in constructive discrimination case of age discrimination that a jury could find plaintiff's refusal of offer of reinstatement to be reasonable

where plaintiff felt there was nothing in the offer to prevent the employer "from turning the screws or doing whatever" to him if he returned, knew that he could make more money by returning to work but "he did not think it was worth the risk because he had no guarantees" of how long he would be employed, and he did not want to go back to work with bad references on his work record. *Smith,* 38 F.3d at 1464. Here, much like the situation found in *Smith,* Naylor asserts he did not accept the offer of reinstatement because he was concerned that, upon his return to work at Georgia–Pacific, he would be subjected to a coercive work environment until he was again terminated.[12] Furthermore, in contrast to the situation found in *Morris,* Georgia–Pacific has completely denied that Naylor reported instances of racial harassment to his supervisors. Naylor, on the other hand, asserts he reported racially derogatory actions to his immediate supervisor, but that no remedial action was taken. From these assertions, the court finds that a material fact issue exists in this case as to whether Naylor acted reasonably in rejecting Georgia–Pacific's offer of reinstatement. *Pierce,* 955 F.2d at 830; *see Smith,* 38 F.3d at 1464. Therefore, the court shall also deny this aspect of Georgia–Pacific's motion.

## V. CONCLUSION

The existence of questions of material fact in this case preclude the court from granting summary judgment. Therefore, Georgia–Pacific's motion for summary judgment shall be denied in all respects.

**IT IS SO ORDERED.**

12. As the *Smith* decision indicates, in order to make out a case of constructive discharge, "a plaintiff must show that " 'a reasonable person would find the conditions intolerable.' " " *Smith,* 38 F.3d at 1460 (quoting *Smith v. Goodyear Tire & Rubber Co.,* 895 F.2d 467, 472 (8th Cir.1990) (quoting in turn *Bunny Bread Co.,* 646 F.2d at 1256). The standard for rejecting an offer of reinstatement is remarkably similar, if not identical: whether " 'a reasonable person would refuse the offer of reinstatement.' " *Smith,* 38 F.3d at 1464 (quoting *Fiedler,* 670 F.2d at 808). Obviously, the continuance of an intolerably hostile work environment can constitute grounds for refusing an offer of reinstatement. *See Smith,* 38 F.3d at 1464; *Maturo,* 722 F.Supp. at 922.